## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT - LAW DIVISION

MOISES DE LEON, )
)
       Plaintiff, )
)
       v. )  No.
)
MORTON COLLEGE, BRENT KNIGHT, )
MARIO MORENO, MARCELLO M. )
RIOS, SUSAN L. BANKS, FRANCIS )
REITZ, EDWARD F. LEDVINA, )
JOSEPH P. CARLISI, FRANK )
MARZULLO, and OLGA VILLAREAL, )
)
       Defendants. )
)
Circuit Court No. 04 L. 14153 )

# 05C 0490

JUDGE HOLDERMAN

MAGISTRATE JUDGE NOLAN

# FILED
JAN 2 7 2005   NF

**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

## NOTICE OF REMOVAL

Defendants, Morton College, Brent Knight, Mario Moreno, Marcello M. Rios, Susan L.

banks, Francis Reitz, Edward F. Ledvina, Joseph P. Carlisi, Frank Marzullo and Olga Villareal by

their attorneys, Odelson & Sterk, Ltd. states as follows:

    1.    Morton College, Brent Knight, Mario Moreno, Marcello M. Rios, Susan L. Banks,

Francis Reitz, Edward F. Ledvina, Joseph P. Carlisi, Frank Marzullo and Olga Villareal are the

defendants in the above-entitled action.

    2.    On or about December 20, 2004, the above-entitled action was commenced against

the defendants in the Circuit Court of Cook County, Illinois, and is now pending in such court.

    3.    On January 12, 2005, Morton College was served with a summons and complaint.

    4.    No further proceedings have been had in this action in the Circuit Court of Cook

County, Illinois.

5.      The above-entitled action is a civil action. Count I alleges a breach of contract under Illinois common law. Count II claims a violation of the plaintiff's procedural due process rights, afforded by 42 U.S.C. §1983.

6.      This Court has original jurisdiction of the above-entitled action pursuant to U.S.C. §1331, and the action may therefore be removed to this Court pursuant to 28 U.S.C. §1441(b).

7.      Copies of state court process and pleadings served on the defendants are attached as Exhibit "A."

8.      This notice is filed with this Court within 30 days after service on Morton College of summons and complaint in the above-entitled action.

WHEREFORE, Morton College requests that the above-entitled action be removed from the Circuit Court of Cook County, Illinois to this Court.

Morton College, Brent Knight, Mario Moreno,
Marcello M. Rios, Susan L. Banks, Francis
Reitz, Edward F. Ledvina, Joseph P. Carlisi,
Frank Marzullo and Olga Villareal

By:     _____

One of their attorneys

Mark H. Sterk
Odelson & Sterk, Ltd.
3318 West 95th Street
Evergreen Park, IL 60805
(708) 424-5678
Attorney No. 91071

| 2120 – Served | 2121 – Served |
|---|---|
| 2220 – Not Served | 2221 – Not Served |
| 2320 – Served By Mail | 2321 – Served by Mail |
| 2420 – Served by Publication | 2421 – Served by Publication |
| SUMMONS | ALIAS - SUMMONS    (Rev. 5/1/92) CCG-1 |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

MOISES DE LEON,                    )
                                   )
                Plaintiff,         )                04L 014153
                                   )                CALENDAR J
        v.                         )    No.         BREACH OF CONTRACT
                                   )
MORTON COLLEGE, BRENT KNIGHT,      )
MARIO MORENO, MARCELLO M.          )    Serve Defendant at:
RIOS, SUSAN L. BANKS, FRANCIS      )
REITZ, EDWARD F. LEDVINA,          )    Morton College
JOSEPH P. CARLISI, FRANK           )    c/o Dr. Brent Knight, President
MARZULLO, and OLGA VILLAREAL,      )    3801 S. Central Avenue
                                   )    Cicero, Illinois  60804
                Defendants.        )

### SUMMONS

To each defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise  file appearance, in the office of the Clerk of this Court (located in the Richard J. Daley  Center,  Room 801,  Chicago, Illinois 60602) within 30 days  after service of this summons, not counting the day of service. IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF ASKED IN THE COMPLAINT.

To the officer:

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service.  If service cannot be made, this summons shall be returned so endorsed.  This summons may not be served later than 30 days after its date.

WITNESS, _____ 0 0 2004 _____ ,2004

_____
Clerk of court

Name Robert D. Kreisman
Attorney for Plaintiff
Address  33 North Dearborn, Suite 2220
City Chicago, IL  60602
Telephone (312) 346-0045
Atty. No. 12926

Date of service: _____
(To be inserted by officer on copy left with
defendant or other person)

DOROTHY BROWN
CLERK OF CIRCUIT COURT

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILL. (SEAL)

*Law Division Room 801
Chancery-Divorce Room 802
County Division Room 801
Probate Division Room 1202

F:\582-001\Pleadings\Complaint.doc

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| MOISES DE LEON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. |
| | ) | |
| MORTON COLLEGE, BRENT KNIGHT, | ) | |
| MARIO MORENO, MARCELLO M. | ) | |
| RIOS, SUSAN L. BANKS, FRANCIS | ) | 04L 01415 |
| REITZ, EDWARD F. LEDVINA, | ) | CALENDAR L |
| JOSEPH P. CARLISI, FRANK | ) | BREACH OF CONTRACT |
| MARZULLO, and OLGA VILLAREAL, | ) | |
| | ) | |
| Defendants. | ) | JURY DEMAND ON ALL COUNTS |

### COMPLAINT FOR DAMAGES
### (BREACH OF CONTRACT AND VIOLATION OF CONSTITUTIONAL RIGHTS)

NOW COMES Plaintiff Moises De Leon ("De Leon"), by his attorney, Robert D. Kreisman, and for his Complaint against the Defendants, states:

### NATURE OF THE ACTION

This is an action for damages against Morton College and the individual members of the Board of Trustees, its president and the associate vice president. De Leon was employed as "Coordinator of Student Activities" and "Coordinator Career Planning and Placement". De Leon was employed pursuant to the Morton College Classified Staff Federation (Union), an agreement between Morton College and the Morton College Classified Staff Federation (Cook County Teachers' Union Local 1600, AFT). Defendants wrongfully terminated De Leon. In so doing, the defendants violated De Leon's constitutional rights to procedural due process and a hearing by an unbiased

panel. In this action, De Leon seeks compensatory, punitive damages and attorney fees.

## PARTIES

1.      Moises De Leon is a resident of Berwyn (Cook County), Illinois and was a public employee of Morton College.

2.      Defendant Morton College operates under the direction and authority of Board of Trustees. Morton College is an educational facility located in Cicero, Illinois.

3.      The defendant Board of Trustees of Community College District 527, County of Cook, State of Illinois was composed of the following defendants on June 30, 2004, who were elected members of the Board of Trustees:

> MARCELLO M. RIOS, SUSAN L. BANKS, FRANCIS REITZ, EDWARD F. LEDVINA, JOSEPH P. CARLISI, FRANK MARZULLO, and OLGA VILLAREAL.

4.      BRENT KNIGHT and MARIO MORENO are officers of Morton College.

5.      Venue properly lies in Cook County, Illinois.

6.      De Leon is a member of the Morton College Classified Staff Federation, a Chapter of the Cook County College Teacher's Union, AFT, Local 1600.

## UNION CONTRACT

7.      Attached hereto as Exhibit 1 is a true and correct copy of the Union Contract between Morton College and Morton College Classified Staff Federation Local 1600 AFT.

8.      De Leon was terminated on June 30, 2004. He was notified by letter of the same on July 1, 2004. Exhibit 4.

2

9.    De Leon was terminated by the defendants on June 30, 2004 in violation of the Union Contract.

10.    De Leon performed his duties during the school year 2003-2004 professionally and in accordance with the Union Contract and in accordance with applicable rules, regulations and policies of the Board of Trustees.

11.    De Leon was raised in salary effective April 29, 2004 and promoted to the position, "Coordinator of Career Planning and Placement" from "Coordinator of Student Activities" wherein his new salary became $40,000.    See Exhibit 2, Full-Time Employment Transfer Report.

## DE LEON'S ACCOMPLISHMENTS

12.    From December 2003 until the time of De Leon's firing, he accomplished, among other things, the following:

a.    De Leon directed the student activities office of Our Lady of Charity Catholic Church that distributed foods and gifts to low income families in the Cicero area.  This followed a student activities office project collecting toys to be donated to the Chicago Catholic Charities. (December 2003)

b.    Represented Morton College with the Cicero Educational Task Force to improve parents' participation in local schools.  (January 2004)

c.    De Leon headed up and Morton College achieved first place in the statewide voter registration drive among all area community colleges.  (February 2004)

3

d. Organized for the first time a Morton College event celebrating Mexican-American activist, Cesar Chavez. (March 2004)

e. Coordinated students from the Campus Activities Board for a national conference on campus life at Washington, D.C. (April 2004)

f. For the first time ever, Morton College was a venue partner for the Latino Film Festival showing films free of charge to students and the community. (April 2004)

g. First time project, had a coffee house gathering where students and persons for the community could bring their musical talents for display. (April 2004)

h. Job evaluation with glowing remarks from Associate Vice President, defendant Mario Moreno. (April 2004)

i. Promoted to Career Planning and Placement Coordinator. (April 2004)

j. Organized and celebrated for the first time Mexican Cinco de Mayo Celebration with food and drinks free of charge for students and the community. (May 2004)

k. Was given charge of school graduation. (May 2004)

l. Organized for the first time ever the Morton College Memorial Day Soccer Tournament. (May 2004)

## BIAS OF INDIVIDUAL MORTON COLLEGE OFFICERS AND BOARD MEMBERS

13. During the course of the school year 2003-2004, Morton College Officers, Brent Knight, Mario Moreno and others developed a personal bias and animosity

4

against De Leon. Bias and ill-will grew out of personal animosities having nothing to do with De Leon's performance of his duties.

14.     During the school year of 2004, these individual officers and members of the Board of Trustees determined that they would wrongfully terminate De Leon.

15.     These individual defendants (officers of Morton College and its Board of Trustees) chose to rely on fabricated, false allegations knowing full-well that the allegations could not be proved and were uncorroborated.

16.     These individual defendants manufactured false allegations of sexual harassment when they knew or should of known that such claims were false, misleading and uncorroborated.

17.     These individual defendants knowing that the allegations of sexual harassment were false, misleading and uncorroborated chose to illegally terminate De Leon's employment without abiding by the contractually mandated disciplinary procedures.   Those elements of disciplinary procedures are found in the Union Contract, attached as Exhibit 1.

## SHAM HEARING AND DEPRIVATION OF PROCEDURAL DUE PROCESS

18.     On or about June 28, 2004, defendant Brent Knight notified De Leon by letter that there would be a "pre-disciplinary meeting". A copy of that letter of June 17, 2004 is attached as Exhibit 3. Note that the defendant Knight chose not to appear at this sham hearing. Instead, Phoebe K. Helm, Knight's appointed representative, a non-employee of Morton College, stood in his place. She was neither an officer of Morton College, nor a board member. None of De Leon's accusers appeared. Anecdotal references, innuendo and rumor were the bases of the termination.

## COUNT I

## (COMMON LAW BREACH OF CONTRACT CLAIM UNDER ILLINOIS LAW)

1-18. De Leon incorporates paragraphs 1 through 18 as though fully set forth herein.

19. The matters raised by Morton College were:

- Violation of Board Policy 8.2.1 Sexual Harassment;

- Violation of Board Policy 6.5, Sexual Harassment of Student;

- Violation of Board Policy 8.2, Conduct and Behavior of Staff.

All of these asserted violations are false.

20. None of the allegations of misconduct alleged to have occurred by De Leon have been substantiated, but were rather used to discredit, defame and humiliate De Leon when at the same time all of the defendants knew that these allegations were false.

21. De Leon made a substantial professional and personal commitment to Morton College and fulfilled all of his obligations. De Leon was not afforded procedural requirements of the Union Contract, Exhibit 1.

22. By virtue of the denial of the procedural requirements of disciplinary action, the Board of Trustees and the individual officers of Morton College, including all of the defendants, have breached the Union Contract.

WHEREFORE, Plaintiff respectfully prays:

A. That this Court find that the defendants and each of them have breached the Union Contract.

6

B.    That De Leon be awarded damages in the sum of $100,000.00.

C.    That De Leon be awarded interests and court costs.

## COUNT II

## (PROCEDURAL DUE PROCESS/42 U.S.C. §1983)

1-22.   De Leon incorporates paragraphs 1 through 22 as though fully set forth herein.

23.    The wrongful termination deprived De Leon of his property interest without procedural due process, all in violation of the Fourteenth Amendment to the United States Constitution for the following reasons.

a.    The "pre-disciplinary" meeting was a sham.

b.    The hearing was presided over (although all were absent) by and directed by bias decision-makers, thereby depriving De Leon of his constitutional right to a decision by an unbiased and impartial decision-maker.

c.    De Leon was not furnished with adequate notice of charges.

d.    De Leon was not furnished with a summary of the evidence to be presented against him.

e.    De Leon was denied any reasonable opportunity to defend himself and be heard.

f.    De Leon was denied the opportunity to any cross-examination with respect to the allegations being made against him.

7

g. The defendants refused to produce any witnesses to the pre-disciplinary hearing when they had control over these witnesses.

h. The defendants based their decision solely on their ill-will of these individual defendants.

i. The defendants refused to follow the procedural disciplinary requirements of the Union Contract.

24. The actions of the individual defendants were taken maliciously with no reasonable basis. In fact, they were motivated out of ill-will.

25. As a result of the violation of De Leon's procedural due process rights as set forth, De Leon suffered injury including, but not limited, to the following:

a. He suffered embarrassment, humiliation and mental pain and suffering

b. He lost his salary and compensation from July 1, 2004 to the present time.

c. He lost all benefits, insurance and other employment benefits that were awarded to him during his tenure at Morton College.

WHEREFORE, Plaintiff respectfully prays:

A. That this Court enter judgment in favor of plaintiff.

B. That De Leon be awarded actual damages in the sum of $1,000,000.00.

C. That this Court award punitive damages against the individual defendants in such amount as the jury deems appropriate.

8

D.     That this Court award De Leon his attorneys' fees pursuant to 42 U.S.C. §1988.

E.     That this Court award such other and further relief as it may deem appropriate.

Respectfully submitted,

Robert D. Kreisman, attorney for the Plaintiff

Kreisman Law Offices
33 North Dearborn, Suite 2220
Chicago, IL 60602
312-346-0045
Attorney No. 12926

STATE OF ILLINOIS )
                    ) SS
COUNTY OF COOK )

## VERIFICATION

Under penalties as provided by law, the undersigned certifies pursuant to 735
ILCS 5/1-109 of the Illinois Code of Civil Procedure certifies that he has read the
foregoing Answers to Interrogatories and certifies that the factual statements contained
therein are true and correct to the best of his information, knowledge and belief and that
he is authorized to execute this certification.

Moises De Leon

SUBSCRIBED and SWORN to
before me this 16th day of December, 2004

NOTARY PUBLIC

"OFFICIAL SEAL"
ROBERT D. KREISMAN
NOTARY PUBLIC STATE OF ILLINOIS
COMMISSION EXPIRES 09/21/06

10



# AGREEMENT

# BETWEEN

# MORTON COLLEGE

# AND



# MORTON COLLEGE CLASSIFIED STAFF FEDERATION

# COOK COUNTY TEACHERS UNION

# LOCAL 1600, A.F.T.

# 2001 -- 2004



PLAINTIFF'S EXHIBIT

# Table of Contents

PREAMBLE ............................................................................................................ 5

ARTICLE I DEFINITIONS ...................................................................................... 6

SECTION 1.1 BOARD.................................................................................................. 6
SECTION 1.2 COLLEGE .............................................................................................. 6
SECTION 1.3 UNION .................................................................................................. 6
SECTION 1.4 AGREEMENT ......................................................................................... 6
SECTION 1.5 EMPLOYEES .......................................................................................... 6
    A. Regular Full-Time Employees ........................................................................ 6
    B. Regular Part-Time Employees ....................................................................... 6
    C. Student Employees ....................................................................................... 6
    D. Temporary Employees ................................................................................. 6
    E. Emergency Employees .................................................................................. 7
SECTION 1.6 IMMEDIATE FAMILY ............................................................................... 7
SECTION 1.7 RED CIRCLING OR RED CIRCLED ............................................................ 7

ARTICLE II RECOGNITION ................................................................................... 8

SECTION 2.1 UNION RECOGNITION............................................................................. 8
SECTION 2.2 NEW POSITIONS.................................................................................... 8
SECTION 2.3 POSITION ABOLITION ............................................................................ 9

ARTICLE III MANAGEMENT RIGHTS ................................................................. 10

SECTION 3.1 BOARD POWERS .................................................................................. 10
SECTION 3.2 BOARD RESPONSIBILITIES .................................................................... 11

ARTICLE IV UNION RIGHTS ............................................................................... 12

SECTION 4.1 VOLUNTARY DUES CHECKOFF ............................................................... 12
SECTION 4.2 REINSTATEMENT OF DUES CHECKOFF.................................................... 12
SECTION 4.3 FAIR SHARE ........................................................................................ 12
SECTION 4.4 COMMITTEE ON POLITICAL EDUCATION (COPE) ..................................... 13
SECTION 4.5 INDEMNIFICATION ............................................................................... 13
SECTION 4.6 UNION MEETINGS ................................................................................ 13
SECTION 4.7 RELEASE TIME ..................................................................................... 14
SECTION 4.8 PUBLIC RECORDS................................................................................. 14
SECTION 4.9 BOARD AGENDA .................................................................................. 14
SECTION 4.10 BOARD POLICIES................................................................................ 14
SECTION 4.11 UNION ACCESS TO BARGAINING UNIT EMPLOYEES ............................... 14
SECTION 4.12 NON-INTERRUPTION OF WORK............................................................ 14
SECTION 4.13 UNION ACCESS .................................................................................. 15
SECTION 4.14 CLASSIFIED STAFF SEAT ON COST CONTAINMENT COMMITTEE ............. 15
SECTION 4.15 CHANGES THAT AFFECT EMPLOYEES ................................................... 15

ARTICLE V NON-DISCRIMINATION .................................................................... 16

SECTION 5.1 NON-DISCRIMINATION.......................................................................... 16

ARTICLE VI HOURS OF WORK........................................................................... 17

SECTION 6.1 WORK WEEK ....................................................................................... 17
SECTION 6.2 WORK YEAR ........................................................................................ 17
SECTION 6.3 SUMMER WORK SCHEDULE .................................................................. 17
SECTION 6.4 LUNCH AND WORK BREAKS .................................................................. 17

SECTION 6.5 OVERTIME.............................................................................................................
SECTION 6.6 CALL-BACK PAY ..........................................................................................18
SECTION 6.7 WORK ASSIGNMENT ....................................................................................18
SECTION 6.8 WORK RULES ...............................................................................................18

ARTICLE VII SENIORITY ..................................................................................................19

SECTION 7.1 DEFINITION ..................................................................................................20
  A. Seniority for Full-Time Employees...............................................................................20
  B. Seniority for Part-Time Employees..............................................................................20
  C. Seniority for Change in Employee Position from Part-Time to Full-Time .....................20
SECTION 7.2 APPLICATION OF SENIORITY ........................................................................20
SECTION 7.3 SENIORITY DURING LEAVE ...........................................................................20
SECTION 7.4 SENIORITY LISTS ..........................................................................................21
SECTION 7.5 PROBATIONARY PERIOD ...............................................................................21
  A. New Employees............................................................................................................21
  B. Promoted Employees ...................................................................................................21
  C. Change in Position Status ...........................................................................................21
  D. Change in Employment Status.....................................................................................21
  E. Grievance Procedure ...................................................................................................21
SECTION 7.6 LAYOFF........................................................................................................21
SECTION 7.7 EMPLOYEE RECALL .....................................................................................22
SECTION 7.8 GRANT-FUNDED EMPLOYEES........................................................................22

ARTICLE VIII FILLING OF VACANCIES.........................................................................23

SECTION 8.1 POSTING.......................................................................................................24
SECTION 8.2 FILLING OF VACANCIES ................................................................................24
SECTION 8.3 RIGHT TO BID...............................................................................................24
SECTION 8.4 BIDDING QUALIFICATIONS ............................................................................24
SECTION 8.5 NEW EMPLOYEES.........................................................................................24
SECTION 8.6 COMPENSATION ...........................................................................................24

ARTICLE XIV DISCIPLINE ..................................................................................................25

SECTION 9.1 JUST CAUSE ................................................................................................26
SECTION 9.2 EMERGENCY SUSPENSION.............................................................................26
SECTION 9.3 TYPES OF DISCIPLINE...................................................................................26
  A. Oral Warning ...............................................................................................................26
  B. Written Warning...........................................................................................................26
  C. Suspension..................................................................................................................26
  D. Discharge....................................................................................................................26
SECTION 9.4 PRE-DISCIPLINARY MEETING ........................................................................26
SECTION 9.5 NOTIFICATION AND MEASURE OF DISCIPLINE ...............................................26
SECTION 9.6 REMOVAL OF DISCIPLINE ..............................................................................26

ARTICLE X EMPLOYEE TRAINING, EVALUATION, AND PERSONNEL FILE ...............27

SECTION 10.1 TRAINING....................................................................................................28
SECTION 10.2 EVALUATION ...............................................................................................28
SECTION 10.3 PERSONNEL FILE........................................................................................28

ARTICLE XI HEALTH AND SAFETY .................................................................................28

SECTION 11.1 APPLICABILITY............................................................................................30
SECTION 11.2 ACCESS TO INFORMATION AND RECORDS ...................................................30
SECTION 11.3 EMPLOYEE WORK REFUSAL ........................................................................30
SECTION 11.4 PROTECTIVE EQUIPMENT ............................................................................30
SECTION 11.5 VIDEO DISPLAY TERMINALS ........................................................................30
SECTION 11.6 ERGONOMIC KEYBOARDS ...........................................................................30
SECTION 11.7 UNIFORMS AND LABORATORY COATS ..........................................................31
  .........................................................................................................................................31

**ARTICLE XII GRIEVANCE PROCEDURE** ........................................................... 32

SECTION 12.1 OBJECTIVE ........................................................................................... 32
SECTION 12.2 DEFINITION OF GRIEVANCE ................................................................. 32
SECTION 12.3 PRE-GRIEVANCE CONSULTATION ......................................................... 32
SECTION 12.4 GRIEVANCE STEPS .............................................................................. 32
SECTION 12.5 AUTHORITY OF ARBITRATOR ............................................................... 33
SECTION 12.6 EXPENSE OF ARBITRATION .................................................................. 34
SECTION 12.7 TIME LIMITS FOR FILING ...................................................................... 34
SECTION 12.8 TIME OF THE ESSENCE ........................................................................ 34
SECTION 12.9 MISCELLANEOUS PROVISIONS .............................................................. 34

**ARTICLE XIII LEAVES OF ABSENCE** ............................................................... 36

SECTION 13.1 PART-TIME BENEFITS ........................................................................... 36
SECTION 13.2 BEREAVEMENT LEAVE .......................................................................... 36
SECTION 13.3 PERSONAL EMERGENCY LEAVE ............................................................ 36
SECTION 13.4 VACATION LEAVE ................................................................................. 36
SECTION 13.5 SICK LEAVE ........................................................................................ 37
SECTION 13.6 PARTIAL SICK LEAVE ........................................................................... 38
SECTION 13.7 JURY DUTY LEAVE ............................................................................... 38
SECTION 13.8 HOLIDAYS OBSERVED .......................................................................... 38
SECTION 13.9 FAMILY MEDICAL LEAVE ACT (FMLA) ................................................... 39
    A. Reasons for Taking Leave ............................................................................ 39
    B. Advance Notice and Medical Certification .................................................... 39
    C. Job Benefits and Protection ......................................................................... 39
    D. Unlawful Acts by Employers ........................................................................ 39
    E. Enforcement ................................................................................................ 40
SECTION 13.10 DISABILITY LEAVE .............................................................................. 40

**ARTICLE XIV EDUCATIONAL BENEFITS** .......................................................... 41

SECTION 14.1 TUITION WAIVER AND REIMBURSEMENT FOR FULL-TIME BARGAINING UNIT MEMBERS . 41
SECTION 14.2 TUITION WAIVER FOR PART-TIME BARGAINING UNIT MEMBERS .............. 41
SECTION 14.3 COMPENSATION FOR EDUCATIONAL IMPROVEMENT ................................ 42

**ARTICLE XV BENEFITS** ................................................................................. 43

SECTION 15.1 MEDICAL, DENTAL, VISION, AND LONG-TERM CARE INSURANCE .............. 43
SECTION 15.2 LIFE INSURANCE .................................................................................. 43
SECTION 15.3 IRS SECTION 125 ............................................................................... 43
SECTION 15.4 CREDIT UNION .................................................................................... 43

**ARTICLE XVI SALARY RANGES, HIRING WAGE GUIDELINES, AND COMPENSATION** ...... 44

SECTION 16.1 SALARY RANGES ................................................................................. 44
SECTION 16.2 SALARY ADJUSTMENTS ........................................................................ 47
    A. Salary Adjustment in FY 02 ......................................................................... 47
    B. Salary Adjustment in FY 03 ......................................................................... 47
    C. Salary Adjustment in FY 04 ......................................................................... 47
    D. Salary Adjustment in FY 05 ......................................................................... 47
SECTION 16.3 PART-TIME HIRING WAGE GUIDELINES .................................................. 47
SECTION 16.4 PART-TIME WAGE ADJUSTMENTS .......................................................... 48
    A. Wage Adjustment in FY 02 .......................................................................... 48
    B. Wage Adjustment in FY 03 .......................................................................... 48
    C. Wage Adjustment in FY 04 .......................................................................... 48
    C. Wage Adjustment in FY 05 .......................................................................... 48
SECTION 16.5 LONGEVITY PAY ................................................................................... 48
SECTION 16.6 NEW EMPLOYEES ................................................................................. 49
SECTION 16.7 PRORATION OF SALARY AND BENEFITS .................................................. 49

ARTICLE XVII  POSITION CLASSIFICATIONS

Section 17.1  Classification Review
Section 17.2  Compensation Adjustment
Section 17.3  Salary Range Adjustment

ARTICLE XVIII  PAST PRACTICE

ARTICLE XIX  SEVERABILITY

ARTICLE XX  PRINTING OF AGREEMENT

ARTICLE XXI  TERM OF AGREEMENT

ARTICLE XXII  WRITTEN NOTICE

APPENDICES

Membership Application and Payroll Dues Checkoff Form
Employee Reinstatement of Dues Deduction Authorization
Employee Recall List Form

INDEX ........................................................................ 61

# Preamble

**THIS AGREEMENT**, covering compensation, hours, fringe benefits, and working conditions is entered into by and between the Board of Community College District No. 527, County of Cook and State of Illinois, hereinafter referred to as the "Board" and the "Morton College Classified Staff Union," a chapter of the Cook County College Teachers Union, AFT, Local 1600 as the exclusive collective bargaining agent to the bargaining unit as defined in Article II, Recognition.

It is the desire and intent of the parties to seek the orderly adjustment of differences that may arise between them, to seek an orderly method of handling and processing grievances and, further, the purpose of the Agreement is to promote harmony and efficiency in the working relationships between the parties so that the public, the College, and the employees may be benefited.

Cognizant of these purposes and understandings, the parties have agreed to each of the provisions of the Agreement hereinafter contained.

**NOW, THEREFORE**, the parties agree as follows:

# Agreement Between Morton College and Morton College Classified Staff Federation Local 1600, AFT

## Article I  Definitions

### Section 1.1  Board

The term "Board" shall mean the Board of Trustees of Community College District 527, County of Cook and State of Illinois, and shall also mean any administrator, supervisor, and agent of the Board when acting within the scope of their authority.

### Section 1.2  College

The term "College" refers collectively to the institution and to all educational facilities or academic locations under the jurisdiction of the Board and the administrative offices thereof.

### Section 1.3  Union

The term "Union" refers to the Morton College Classified Staff Federation, a chapter of the Cook County College Teachers Union, AFT, Local 1600.

### Section 1.4  Agreement

The term "Agreement" shall mean the current collective bargaining agreement between the Board and the Union.

### Section 1.5  Employees

**A.  Regular Full-Time Employees**

Regular full-time employees are those employees who work the equivalent of thirty-seven and one-half (37.5) hours per week, each week, for fifty-two (52) weeks per year.

**B.  Regular Part-Time Employees**

Regular part-time employees are those employees who work twenty (20) hours per week or more, each week, for thirty-two (32) weeks per year.

**C.  Student Employees**

Student employees, regardless of the number of hours worked per week or per year, shall not be considered part of the bargaining unit.

**D.  Temporary Employees**

Temporary full-time and temporary or irregular employees, not covered by this Agreement, are defined as follows:

- Temporary full-time employees are those employees who work thirty-seven and one-half (37.5) hours per week for not more than six (6) months. If such an employee is hired by the College as a regular employee, in the same position, such six (6) months employment as a temporary full-time employee shall constitute four (4) months time towards completion of the original probationary period. If the employee begins employment after the first day of the fiscal year, the employee's salary shall be pro-rated, but shall be no less than the minimum of the pay grade.

  Temporary full-time positions which, in the judgment of the Board, are to become permanent full-time positions shall, not less than thirty (30) days prior to the expiration of the six (6) month period provided for herein, be posted for bidding and awarded pursuant to the provisions of Article VIII of this Agreement.

- Temporary or irregular part-time employees are those persons who work less than thirty-seven and one-half (37.5) hours per week for up to six (6) months on an as-needed or call basis.

- The administration shall notify the Union of the name of any temporary employee hired into a bargaining unit position for a period of time to exceed thirty (30) days. Such notification shall take place at the time of hiring or when it is determined that the time shall exceed thirty (30) days.

E. **Emergency Employees**

Emergency employees are those employees who are hired because of the necessities of an emergency situation, regardless of duration, and whose employment depends upon the existence of the emergency situation and no other factors.

## Section 1.6  Immediate Family

The immediate family includes an employee's spouse, children, parents, siblings, grandparents, grandchildren, any relative or dependent (as defined by the Internal Revenue Service) living in the employee's household, and comparable relatives in the spouse's family.

## Section 1.7  Red Circling or Red Circled

The term "Red Circling" shall mean the administrative act of freezing the rate of compensation of an employee, pursuant to the provisions of this Agreement, until certain conditions are met. Such an employee shall be described as "Red Circled."

# Article II  Recognition

## Section 2.1  Union Recognition

The Board recognizes the Union as the sole and exclusive bargaining agent for the purpose of establishing compensation, hours, fringe benefits, and conditions of employment for all Board approved regular full-time and regular part-time employees (i.e., those employees regularly scheduled to work twenty (20) or more hours per week as defined in Article I, Section 1.5B).

## Section 2.2  New Positions

A. Prior to putting a new position on the board agenda, the Board shall promptly notify the Union of its decision to add new positions or change existing positions.  If the new position is a successor title to a position covered by this Agreement, with no substantial change in duties, the new position shall become part of this Agreement.  If the proposed new position contains a significant part of the work now done by any of the positions in this bargaining unit, the Board shall notify the Union within thirty (30) days, and the parties shall then meet within fifteen (15) days of such notice to review the position, and if unable to reach agreement as to its inclusion or exclusion from the unit, shall submit the question to final and binding arbitration under the Grievance Procedure.

B. When the decision has been made to either establish a new position or to change an existing position, the job description for each such position shall be written and published using a standard format which shall contain the following elements:

**Job Title:**  A brief description that accurately identifies the job and places the job within a series of like positions.

**Job Summary:**  A general statement which summarizes and characterizes the basic job purpose and function.

**Typical Duties:**  Individual statement of job duties and responsibilities.  Duties and tasks of significance are included, but particular reference to frequency or regularity of performing the task shall not be included.  Statements shall be descriptive of the degree of requisite skills applied such as technical, interpersonal, and conceptual skills.

**Required and Desirable Qualifications:**  A basic statement that sets forth the mandatory and preferred minimum acceptable levels of acquired skills, education, training, and related work and other experience required and desirable for the position.

C. Upon installation of the new position, the position shall be filled by the incumbent if the incumbent is qualified to perform the required work.  If the incumbent does not possess the requisite skills or knowledge to perform the required work in the new operation, the Board shall endeavor to provide the necessary training to such employees during work hours at the expense of the Board.  However, such training and acquisition of skills must be attainable within twenty (20) work days, or within the period specified by any supplier of equipment or machinery as the time period within which the skills should be attainable.  Whenever the time period indicated by such a supplier is more than twenty (20) work days, then, in that event, the supplier's time period shall prevail.  If such incumbent employee does not attain the skills and knowledge required for the new position in the time periods herein specified, then, in that event, the Board shall take the appropriate steps provided for in this Agreement to fill such position with another employee.

D. The Board shall establish the salary range for the position after meeting and consulting with the Union, if the Union so requests. In any event, the final decision rests in the sole discretion of the Board.

## Section 2.3 Position Abolition

If the Board decides to abolish or merge job positions under this Agreement, it shall notify the Union in writing ten (10) days prior to the decision to effectuate such a change. Such notification shall be made no less than thirty (30) days prior to the implementation of such change.

# Article III Management Rights

## Section 3.1 Board Powers

The Board, on behalf of the electors of the District, retains and reserves the ultimate responsibilities for proper management of the College District conferred upon and vested in it by the statutes and the Constitutions of the State of Illinois and the United States, subject to the terms of this Agreement, including, but not limited to the responsibilities for and the right:

A. To maintain executive management and administrative control of the College District and its properties and facilities and the activities of its employees, including bargaining unit employees, as related to the conduct of College affairs.

B. To hire all employees and, subject to the provisions of law and this Agreement, to determine their qualifications and the conditions of their continued employment, discipline, dismissal, demotion for just cause and layoff consistent with the provisions of Article VII, Seniority, of this Agreement, and to promote, assign, and transfer all such employees.

C. To direct and control the work of its employees, establish reasonable work rules and regulations, determine the time and hours of operation, when overtime shall be worked and determine the levels of service to be provided and the methods and means of providing those services, including the right to enter into contracts with private vendors for all services, whenever deemed appropriate, in the sole judgment of the Board. Before the Board decides to contract out the services covered by this Agreement, the Board agrees to immediately meet and to negotiate, at an accelerated pace, the effects of any such action with the Union in accordance with the *Carbondale* Decision, IELRB Case #2PERI 1067, provided that such negotiations shall not inhibit or delay the action of the Board.

D. To establish, change, combine, or abolish job positions and the job content of any position consistent with this Agreement.

E. To establish educational policies, goals, and objectives based upon the College's mission; to insure the rights and educational opportunities of the students; to determine staffing patterns; and to determine the number and kinds of personnel required in order to maintain the efficiency of College operations.

F. To build, move, or modify facilities; establish budget procedures; and determine budgetary allocations; determine the methods of raising revenue; and take action on any matter in the event of an emergency.

G. To delegate authority through recognized administrative channels, recognizing that the Board normally exercises most of its powers, rights, authorities, duties, and responsibilities through the President and members of the administrative staff.

H. To agreement by the parties that all customary and usual rights, powers, functions, and authority possessed by management are vested in the Board and administration, and they shall continue to exclusively exercise such powers, duties, and responsibilities during the period of this Agreement except as limited by the specific and express terms of the Agreement, and thus to take whatever actions may be necessary or appropriate to carry out the mission of the College, in the sole discretion of the Board. Such action shall not be conducted in an arbitrary or capricious manner.

## Section 3.2  Board Responsibilities

The exercise of the foregoing powers, rights, authorities, duties, and responsibilities by the Board, the adoption of policies, rules, regulations, and practices in furtherance thereof, shall be limited only by the specific and express terms of this Agreement and then only to the extent such specific and express terms hereof are in conformance with the Constitution and laws of the State of Illinois and the Constitution and laws of the United States.

No action, statement, agreement, settlement, or representation made by either party shall impose any obligation or duty or be considered to be authorized by or binding upon the Board unless and until the parties have mutually agreed thereto in writing.  Nothing contained herein shall limit the parties' rights to settle grievances in accordance with Article XII, Grievance Procedure.

Nothing contained herein shall be construed to deny or restrict the Board of its rights, responsibilities, and other authority under the Illinois Community College Act and rules which have derived from it, or any other national, state, county, district, or local laws or regulations as they pertain to education.

# Article IV  Union Rights

## Section 4.1  Voluntary Dues Checkoff

Upon receipt of voluntary written authorization by an employee covered by this Agreement, upon a form supplied by the Union, the Board will deduct from the employee's wages the required amount of monthly Union dues. These deductions will be designated to the Board in writing. Such deductions shall be made each pay period and said deductions, when calculated on a percentage basis, shall apply to the member's base pay. Base pay shall be determined on the basis of the employee's regularly scheduled shift.

The Union may change the method of amount of said deductions upon reasonable written notice to the College by the Treasurer of the Union. The dues and a list of employees from whose pay the dues have been deducted, along with the amount deducted from each and a list of Union members who had authorized such deductions and from whom no deductions were made, shall be forwarded to the Union after each pay period, addressed to the Union in care of its Treasurer or such other address the Union shall advise on a timely basis.

A member of the Union may revoke the dues checkoff authorization previously executed in writing in accordance with applicable law. The Union member shall, in writing, notify the Union Treasurer and shall, in writing, at the same time notify the payroll clerk.

In consideration for the above service rendered by the Board, the Union shall indemnify and save the Board and its staff harmless against any and all claims, demands, suits, or other forms of liability that shall arise out of or by reason of action taken or not taken by the Board under this Section, including but not limited to failure to withhold or remit, incorrect withholding or remittance, or withholding without proper employee authorization. The payroll deduction authorization form shall be the same as shown in the Appendices.

## Section 4.2  Reinstatement of Dues Checkoff

Whenever an employee takes a leave of absence and is, therefore, removed from the process of Union dues deduction and, subsequently, such employee returns to his or her employment, upon the voluntary execution of the written form attached hereto in the Appendices requesting reinstatement to the process of dues deduction, such employee at that time shall be so reinstated.

## Section 4.3  Fair Share

The Union shall represent all of the employees in the bargaining unit fairly and equally. Employees covered by this Agreement, upon completion of their original probationary period, shall be required to maintain membership in the Union or to pay, in lieu of dues, a fair share fee consisting of their proportionate share of the costs of services rendered for the collective bargaining process, contract administration, and pursuit of matters affecting compensation, hours, and other conditions of employment; provided, however, that the fair share fee shall not exceed the dues attributable to being a member of the Union, further the amount of the fair share fee shall not include any contributions related to the election of or support of any candidate for political office or for any member-only benefit. The amount of the fee, and a list of those employees required to pay such fee, shall be certified to the Board by the Union, and fair share deductions shall be made at the same time and in the same manner as dues checkoff deductions under Section 4.1.

Should any employee object to paying a fair share fee to the Union, based upon bona fide religious tenets or the teachings of a church or religious body of which such employee is a member pursuant to Illinois Public Act 83-1014, Section X, an amount equal to the employee's fair share shall be paid to the Morton College Foundation, an Illinois not-for-profit corporation, or to a non-religious charitable organization mutually agreed upon by the employee and the Union. If the employee and the Union are unable to agree on the matter, payments in lieu of fair share shall be made to a charitable organization from a list of charitable organizations approved by the Illinois state Educational Labor Relations Board. The Union shall certify to the Board the charitable organization to which such payments are to be made, or the employee may elect to make such payments directly to the designated organization, provided that written receipts evidencing payment are supplied to the Union on a monthly basis. It shall be the sole responsibility of the Union to monitor and insure compliance by those employees who may elect to make such payments directly to the designated organization.

The Union agrees to assume full responsibility to insure full compliance with the requirements laid down by the United States Supreme Court in *Chicago Teachers Union v. Hudson*, 106 U.S. 1066 (1986), with respect to the constitutional rights of fair share fee payers and to all executive, judicial, and legislative enactments -- federal, state, and local -- which relate thereto. It is specifically agreed that any dispute concerning the amount of the fair share fee or responsibilities of the Union with respect to fair share fee as set forth above shall not be subject to the grievance and arbitration procedure set forth in this Agreement.

## Section 4.4  Committee on Political Education (COPE)

Upon receipt of a voluntary written authorization from an employee, the Board shall deduct an amount specified by the employee from his or her paycheck and send it to the Union Treasurer. Such deductions shall continue until the Board receives a written revocation from the employee stating that he or she no longer wants the deduction to be taken.

Deductions shall be remitted in a timely manner and shall be accompanied by an itemized list showing the name of each employee and the amount of the deduction withheld.

## Section 4.5  Indemnification

The Union shall indemnify, defend, and hold the Board harmless against any claim, demand, suit, cost, expense, or any other form of liability, including reasonable attorney's fees and costs arising from or incurred as a result of any act taken or not taken by the Board, its members, officers, agents, employees, or representatives in complying with or carrying out the provisions of Article IV; in reliance on any notice, letter, or authorization forwarded to the Board by the Union pursuant to Article IV; and including any charge that the Board failed to discharge any duty owed to its employees arising out of any deduction.

## Section 4.6  Union Meetings

The Union shall have the right to schedule a general meeting on the first Thursday of each month if such Thursday is a regularly scheduled workday. The meetings shall be scheduled from 11:30 a.m. to 12:30 p.m. and from 12:30 p.m. to 1:30 p.m. to accommodate individual employee lunch schedules. During the summer, the College will cooperate with the Union to reasonably set the time and day of such meetings to conform to the summer schedule of work days. Every Bargaining unit member, subject to the needs of the College, shall be free to attend such meetings without pay. The date of the Union's general meeting shall appear on all calendars distributed throughout the College.

It is understood that special circumstances dealing with the security, maintenance, and vitally essential forces may result in the inability of an employee to attend such meetings. Supervisors shall not, however, arbitrarily impose such limitations upon any employee.

## Section 4.7  Release Time

The Union President or designee shall receive (two) 2 paid days of release time per year. The time may be taken in two (2) hour increments and must be approved in like manner to other leaves.

Employees shall, after giving notice to their supervisor, be allowed time off with pay during working hours to attend grievance hearings, labor-management meetings, or meetings called or agreed to by the Board if such employees are entitled to attend such meetings because they are Union representatives, stewards, witnesses, or grievants.

## Section 4.8  Public Records

The Board shall make available to the Union any existing records which are relevant to negotiations or the enforcement of this Agreement.

## Section 4.9  Board Agenda

The Union shall be supplied with a copy of the agenda and the date of any regular or special meeting of the Board at the time the agenda is distributed to the Board.

## Section 4.10  Board Policies

One (1) copy of the official policies of the Board, regulations and by-laws, and all subsequent additions, deletions, and amendments shall be provided to the Union.

## Section 4.11  Union Access to Bargaining Unit Employees

The Board agrees that appropriately designated Union officials may have access to bargaining unit employees. The Union agrees that in the exercise of such access it will not interfere with the normal duties of the employees. The Union further agrees that such contact with employees shall take place only during breaks and before or after normal working hours except in highly unusual circumstances. When such circumstances arise, the Union shall obtain the supervisor's approval for employee contact. Such approval shall not be arbitrarily withheld by the supervisor without good cause shown.

## Section 4.12  Non-Interruption of Work

The Union or any employee of the bargaining unit shall not engage in or in any way instigate, promote, sponsor, or condone any strike, slowdown, picketing, boycott, or concerted stoppage of work or any other intentional interruption of the College including compliance with requests of any labor organization or chapter thereof to engage in such activities.

The Union recognizes the duty and obligation of its representatives to comply with the provisions of this Agreement and to make every reasonable effort to induce bargaining unit members to do so. In the event any bargaining unit employee(s) engage in any of the activities herein prohibited, the Union agrees in good faith to take all necessary steps to induce those employees to cease such action.

Any employee covered by this Agreement who violates the provisions of this Section may be disciplined up to and including discharge by the Board.

Any staff member who engages in picketing may be disciplined, including discharge, if that member persists in such violation subsequent to receiving one (1) written warning to cease and desist from such conduct from the Director of Human Resources.

Any employee who is disciplined or discharged for violation of the terms of this Section shall be accorded the right to file an appeal in accordance with the grievance procedure contained in this Agreement.

During the term of this Agreement, the Board agrees that it will not institute a lockout.

## Section 4.13  Union Access

The Union may distribute Union literature on College property provided that there is no interference with College operation. No one shall be allowed to distribute Union materials in a manner which disrupts employees during the performance of their duties.

The materials so distributed shall not be of an inflammatory, derogatory, accusatory, or partisan political nature.

The College agrees that it shall provide sufficient space on one (1) designated bulletin board to be agreed upon between the College and the Union. The Union agrees that only appropriate materials dealing with Union business shall be posted thereon and that the area so designated shall be kept in as reasonable order as is possible by removing outdated material.

The Union shall have the privilege of access to the room reservation and duplication procedures of the College.

## Section 4.14  Classified Staff Seat on Cost Containment Committee

The Union may appoint one (1) representative to the Medical Insurance Cost Containment Committee.

## Section 4.15  Notification of Changes That Affect Employees

A.  The Board shall inform the Union of any substantial change in job duties or reorganization that affects bargaining unit members sixty (60) days prior to the change.

B.  When a change in operations due to technological innovations occur, the Board shall give first consideration to affected employees. If the affected employees do not possess the skills or knowledge to perform the required work in the new operation, the Board shall provide the necessary training to such employees during work hours at the Board's expense within thirty (30) work days of such change. However, such training and skill acquisition must be attainable within thirty (30) work days, or within the period specified by the supplier of the equipment or machinery as the time period within which the skills should be attainable.

# Article V Non-Discrimination

## Section 5.1 Non-Discrimination

The Board shall not discriminate against any employee on the basis of sex, race, color, creed, national origin, marital status, parental status, age, religion, physical or mental handicap – actual or perceived, sexual preference, or Union activity.

# Article VI Hours of Work

## Section 6.1 Work Week

The normal work week for full-time employees shall consist of five (5) consecutive days for forty (40) weeks. The employee shall work seven (7) hours and thirty (30) minutes per day excluding lunch.

Nothing contained herein shall prohibit adjustments hereto, on an individual basis, depending on the needs of the College and its departments' requirements, subject to the provisions of Section 6.5, Paragraph C.

## Section 6.2 Work Year

The work year shall be the fiscal year of the College.

## Section 6.3 Summer Work Schedule

For the twelve (12) work weeks during the summer, the normal work week for full-time employees shall be four (4) eight (8) hour days, excluding lunch. Provided, however, that depending upon the scheduling necessitated by the needs of the College, such days need not be consecutive days and may begin upon any day of the week and at any hour of the day.

It is expressly understood and agreed by the parties hereto that the decision to continue to offer a summer work schedule as provided for herein rests solely with the discretion of the Board.

Nothing contained herein shall prohibit adjustments hereto, on an individual basis, depending on the needs of the College and its departments, subject to the provisions of Section 6.5, Paragraph C.

## Section 6.4 Lunch and Work Breaks

During the work week provided for in Section 6.1, an employee who is scheduled to work seven and one-half (7.5) or more consecutive hours shall receive a one (1) hour unpaid lunch period and one (1) paid fifteen (15) minute break.

Lunch and work break periods shall be staggered to insure that all offices and departments of the College maintain appropriate service levels for the hours during which the College is open. Provided, however, that all work breaks shall be taken within the first four (4) hours of work in each work day.

Part-time employees shall receive one (1) paid fifteen (15) minute work break to be taken only in the first four (4) hours of work in the work day.

During the work week provided in Section 6.3, an employee who is scheduled to work eight (8) or more consecutive hours shall receive one (1) thirty (30) minute unpaid lunch period and one (1) fifteen (15) minute unpaid work break.

## Section 6.5  Overtime

A.  All full-time employees who work beyond their normal work week shall receive overtime pay.  Overtime shall be paid at the rate of one and one-half (1.5) times for all hours worked beyond the normal work week.  A part-time employee who works more than thirty-seven and one-half (37.5) hours in a week in the academic year shall be paid at the appropriate overtime rate as listed in this Section.

B.  A full-time employee who normally works Monday through Friday is paid one and one-half (1.5) times the regular hourly rate of pay for work performed on Saturday, two (2) times the regular hourly rate of pay for work performed on Sunday, and three (3) times the regular hourly rate of pay for work performed on a holiday observed by Morton College. Three (3) times the regular hourly rate of pay is the maximum hourly rate of pay that can be earned.

C.  Flex time is a temporary adjustment to an employee's daily work schedule which does not change the total number of hours the employee normally works during the week.  A supervisor may assign flex time in cases of short-term illness, vacation leave of one (1) week or less, and personal leave provided, however, that flex time arrangements for other reasons during a work week may be made between the employee and supervisor.

Overtime shall be used when a position is vacant by reason of illness or vacation with a duration of more than one (1) week.

Overtime shall be used when a position is vacant for reasons other than illness or vacation with a duration of over one month.

D.  The past practice, as defined in Article XVIII of this Agreement, of paying overtime for certain College activities shall remain in effect.

## Section 6.6  Call-Back Pay

An employee called back to work on any day after having gone home shall receive a minimum of two (2) hours work at time and one-half (1.5) of his or her regular straight time hourly rate.

## Section 6.7  Work Assignment

It is agreed that each employee shall perform all the duties of a position and other job-related duties as assigned.  Assignments may be made outside the regular position of the employee from time-to-time as College needs require providing such duties are within the level of skill of the employee. It is understood that such assignments (temporary transfers) shall not be for more than ten (10) weeks.

When an employee is assigned to work temporarily in a higher paying position there shall be no change in the rate of compensation for five (5) work days.  Thereafter, if the employee continues to work in the higher paying position, the employee shall be paid at the rate of compensation ten (10) percent higher than the employee's regular rate of compensation, and for those days worked in excess of said five (5) days.

Temporary assignment is defined as, and effectuated when, the employee:

A.  is assigned to perform the required work in a higher position; and

B.  performs a preponderance of the duties of the higher position.

The parties further agree that such transfers shall not be applied in an arbitrary or discriminatory manner nor shall they be used to circumvent the intent of the job posting and job application provisions of this Agreement.

## Section 6.8  Work Rules

Whenever the Board changes work rules, issues new work rules, or makes permanent changes in employees' shift assignments, the Union shall be given at least thirty (30) days notice before the effective date.  Upon written request of the Union, the Board shall meet and discuss the new or changed work rules.  However, such discussion shall not prohibit the Board from implementing such changes in said rules, the implementation of new rules, or the change in shift assignments.  Further, a copy of the new or changed rules shall be posted and given to the affected employees before the changes take effect.

# Article VII  Seniority

## Section 7.1  Definition

A.  **Seniority for Full-Time Employees**

Seniority is the length of continuous service.  Upon employment, each employee is to receive a seniority date which is the first day of actual work.  If two or more employees have the same seniority date, the dates of the employees' applications control seniority. The employee with the earlier application is senior.

B.  **Seniority for Part-Time Employees**

Seniority is the length of continuous service.  Upon employment, each employee is to receive a seniority date which is the first day of actual work.  If two or more employees have the same seniority date, the dates of the employees' applications control seniority. The employee with the earlier application is senior.

C.  **Seniority for Change in Employee Position from Part-Time to Full-Time**

When a part-time position is made into a full-time position, with the part-time employee remaining in this position as full-time, then time worked as a part-time employee in that position shall be carried to full-time status.

## Section 7.2  Application of Seniority

Relative to the application of seniority under this Agreement, the ability of the employee means the ability to perform the required work.  It shall be the sole responsibility of the Board to fairly determine whether an employee has the requisite ability to perform the required work.

In determining such ability, the administration of the College shall carefully review work skills, workload, and responsibilities, and shall, insofar as applicable and appropriate, utilize the following factors in such evaluation:

A.  Knowledge or Experience

B.  Training on the Job

C.  Responsibility

D.  Judgment and Initiative

E.  Accountability

F.  Communication Skills

G.  Physical Dexterity

H.  Supervision Given

I.  Working Environment or Physical and Emotional Demands

J.  Attendance or Punctuality

K.  Quality of Work

L.  Quantity of Work

Standardized examinations and interviews may also be utilized in evaluating an employee. Favorable judgment shall not be unreasonably or arbitrarily withheld.

## Section 7.3  Seniority During Leave

Seniority shall continue to accumulate during an approved leave of absence, layoff, or disability.

## Section 7.4  Seniority Lists

The Board shall prepare seniority lists for full-time and part-time employees once a year and deliver them to the Union no later than February 1 of each year.

## Section 7.5  Probationary Period

### A.    New Employees

All new employees shall serve a probationary period of one hundred and eighty (180) calendar days.  An evaluation shall be performed at ninety (90) calendar days and one hundred and seventy (170) calendar days.

### B.    Promoted Employees

An employee who has completed the original probationary period and is promoted, transferred, or demoted to another position in a higher, same, or lower salary range shall serve an additional sixty (60) day probation.  If such an employee fails to satisfactorily complete the probationary period in the new position, the Board shall return the employee to the previous position.

### C.    Change in Position Status

A part-time employee whose position is increased to full-time status, and who has completed the initial probation period for the part-time position, shall not be required to complete another probationary period for that position.  All paid leave benefits shall be made available to the employee in accordance with the Board action approving the employee's change in employment status.

### D.    Change in Employment Status

A part-time employee, who has completed the initial probationary period, hired for a full-time position with the same job duties and job description, shall be required to complete a thirty (30) day probationary period for the new position.  All paid leave benefits shall be made available to the employee in accordance with the Board action approving the employee's change in employment status.  If the employee fails to satisfactorily complete the probationary period in the new position, the Board shall return the employee to the previous position.

### E.    Grievance Procedure

Any grievance brought by an employee or the Union relative to actions taken by the Board for discharge during a probationary period under Paragraph A of this Section shall not be processed beyond Step 2 of the Grievance Procedure provided for in this Agreement.

## Section 7.6 Layoff

In the event that circumstances require that employees be laid off, the following is the sequence of layoffs to be followed:

A.  Temporary employees and other irregular employees

B.  Part-time employees not covered by a collective bargaining agreement

C.  Probationary employees in their original probationary period as defined in Section 7.5, Paragraph A of this Article

D.  In the event of further reductions in force, bargaining unit members shall be laid off from the affected position in accordance with their seniority; however, no non-bargaining unit employee shall be laid off if the work being performed by such employee cannot be performed by a bargaining unit member

## Section 7.7 Employee Recall

Employees who are laid off, and who voluntarily execute a written request, attached hereto in the Appendices, to be placed upon a recall list shall be placed upon such list. Such employees notify the College in writing each six (6) months thereafter that they wish to remain on the recall list, and such employees shall so remain on the list for a period of twenty-four (24) months. Any employee failing to so notify the designee of the Board in writing on the form attached hereto in the Appendices shall be automatically removed from such list. The College agrees to furnish four (4) copies of such form to each employee so laid off.

Further, each employee so laid off shall, within fifteen (15) days of any change, inform the College by written notification of his or her new address and telephone number to facilitate the implementation of the recall provisions of this Section. Such responsibility shall rest solely upon the employee and the College shall not be liable for the failure of a recall attempt due to a breach of the employee's responsibility to so notify the College.

Thereupon, any recall of employees from the list shall in the inverse order of layoff. If an employee is recalled to a position in a lower position, the employee shall have the right to return to the previous position when a vacancy occurs. If an employee is recalled to a lower position in a lower classification, the employee shall have the right to refuse recall without jeopardizing the employee's right to remain on the recall list.

The parties understand that the Board is not required to recall employees on laid off status who were in positions lower than the job position to be filled by the recall. It is further understood that the Board is required to notify employees on the recall list from positions the same as or higher than the position to be filled by recall. Employees in such higher positions may exercise the privilege of being recalled if they wish to move down to the position to be filled.

The Board agrees that it shall hire no new employees and place them in bargaining unit positions until the recall list has been exhausted. To effectuate the call of the entire list, written notification of the recall shall be served upon all employees so listed upon the recall list at their last known address by certified mail – return receipt requested. Within seven (7) days after the deposit of said letters with the United States Postal Service, those employees seeking recall for the vacant position shall cause to be filed with the Director of Human Resources of the College a written request to be recalled. Thereupon, the provisions for recall contained herein shall become operative. Failing an effective recall from the list, the College shall be free and empowered to hire new employees into such bargaining unit positions.

## Section 7.8  Grant-Funded Employees

Full-time bargaining unit members who are compensated with monies derived from grants or other sources shall, when such funding sources expire, be offered full-time bargaining unit positions which are vacant and for which they are fully qualified.

Part-time bargaining unit members who are compensated with monies derived from grants or other sources shall, when such funding sources expire, be offered part-time bargaining unit positions which are vacant and for which they are fully qualified.

In the event that such an employee is not fully qualified, then, in that event, such employee shall be granted a thirty (30) day period in which to acquire the qualifications for such position.

In the event that such employee does not attain such qualifications, then, in that event, the employee shall go on layoff status pursuant to the provisions of the collective bargaining agreement.

# Article VIII  Filling of Vacancies

## Section 8.1  Posting

All vacancies covered by this Agreement shall be posted within the College only for five (5) working days. The vacancies shall be posted in an area that is accessible to employees during their regular work hours. After five (5) working days, the position may be posted outside of the College.

## Section 8.2  Filling of Vacancies

Vacancies shall be filled by qualified personnel as follows:

    A.   Recall from layoff or from those subject to layoff

    B.   Promotion from among employees covered by this Agreement

    C.   Anyone else

The senior most qualified employee who bids on the vacancy shall be notified of the recommendation within five (5) days of the end of the selection process. The recommendation shall be forwarded to the Board for its consideration at the next regularly scheduled Board meeting. The qualifications of the employee shall be determined pursuant to application of the criteria contained in Article VII, Section 7.2 of this Agreement.

## Section 8.3  Right to Bid

Employees covered under this Agreement shall have the right to bid on any vacancy.

## Section 8.4  Bidding Qualifications

Regular bargaining unit qualified employees may bid for vacancies or newly created positions. Those with the most seniority shall be given the first opportunity to be considered for such vacancy. The College agrees that it will award the job to the qualified senior employee bidding, based upon the qualifications and factors contained in Article VII, Section 7.2 of this Agreement, but only if that employee is at least relatively equal in qualifications, ability, and physical fitness where applicable to the other applicants. However, the determination of the qualifications for any job shall rest with the College subject to the grievance procedure set forth in this Agreement. The College shall notify all applicants of the award of the position promptly after approval of a candidate by the Board.

The provisions of this Section shall further be subject to the applicable laws dealing with affirmative action and equal employment opportunity.

The applicable provisions relating to original probationary status in a new position shall prevail pursuant to this Section.

## Section 8.5  New Employees

The Board shall notify the Union within ten (10) working days of the date of the hiring of new bargaining unit employees and shall provide the name, salary, and job position of the employee.

## Section 8.6  Compensation

Any employee who has been employed for a period of one (1) year or more and successfully bids into a higher paying position, shall receive a ten (10) percent increase in salary or the minimum of the new salary range, whichever is greater.  Any employee who was red-circled in that employee's previous position and who successfully bids into an equal or higher paying position shall be entitled to keep the red-circled rate if it is higher than the promotional increase.

Any employee successfully bidding into a lower salary range shall be compensated at that employee's current rate of pay.

# Article XIV Discipline

## Section 9.1 Just Cause

At all times, supervisors and employees are encouraged to communicate with one another and to resolve any problems that may arise. However, the Board and the Union recognize that, from time to time, circumstances will arise which require the just dispensation of discipline.

Discipline shall be for just cause shown and shall be performed in a timely and progressive manner. All discipline shall be issued in a private and confidential manner.

## Section 9.2 Emergency Suspension

The Board reserves the right to place an employee on suspension or on suspension pending discharge for acts that threaten the effective operation and safety of the institution and those individuals associated with it pending a just cause hearing on the alleged offense(s).

## Section 9.3 Types of Discipline

A. **Oral Warning**

The oral warning shall be delivered to the employee by the supervisor. The supervisor shall draft a memorandum of oral warning. A copy of such memorandum shall be served upon the employee who shall sign a copy to acknowledge receipt thereof and to further acknowledge the employee's understanding that the signed copy shall be retained by the supervisor. Such memoranda may be used as evidence in future disciplinary actions against the employee.

B. **Written Warning**

C. **Suspension**

D. **Discharge**

## Section 9.4 Pre-Disciplinary Meeting

For discipline other than oral warnings, the Board shall notify the Union and schedule a pre-disciplinary meeting with the employee and the Union. At this meeting, the Board shall inform the employee of the reason(s) for the contemplated discipline. The employee and the Union designated person shall have the right to rebut or clarify the reasons for such discipline.

The persons present at the meeting shall be limited to the employee, one (1) Union designated representative, the supervisor involved, and the Director of Human Resources. No other person shall be present.

Expect as provided in Section 9.2 of this Article, there shall be compliance with the provisions of this Section prior to the imposition of any discipline provided for in Sections 9.2 and 9.3.

## Section 9.5 Notification and Measure of Discipline

All levels of disciplinary action taken against an employee shall be done so in writing with the full reasons stated therein. A copy of such disciplinary action shall be served upon the employee and

the Union, except in the case of an oral warning wherein the provisions of Section 9.3 (A) of this Article are applicable.

Once the Board has determined the measure of discipline for that offense only, it shall not be increased for such offense. The disciplinary action taken shall not be a precedent for any conduct of a similar nature for any other employee.

## Section 9.6  Removal of Discipline

The record of any and all disciplinary actions shall be removed from an employee's personnel file after two (2) years if the employee has received no additional discipline for the same offense.

# Article X  Employee Training, Evaluation, and Personnel File

## Section 10.1  Training

The Board and the Union recognize the need for training and development of employees to provide more efficient and effective services, and to give employees the opportunity to develop their skills and potential. In recognition of this principle, the Board shall endeavor to provide employees with reasonable orientation with respect to current procedures, forms, methods, techniques, materials, and equipment normally used in employees' work assignments and periodic changes therein, including, where applicable, procedural manuals.

## Section 10.2  Evaluation

### A.    Informal Evaluation

From time to time the supervisor is encouraged to hold informal evaluation conferences with the employee to discuss work performance, job satisfaction, work-related problems, and the work environment. If work performance problems are identified, the supervisor shall offer constructive suggestions and shall attempt to aid the employee in resolving any problems. If the conference involves a written evaluation, the employee shall be given a copy of the evaluation.

### B.    Written Evaluation

1. A new bargaining unit member shall be evaluated at the ninetieth (90) and one hundred and seventieth (170) days of the one hundred and eighty (180) day probationary period.

2. A bargaining unit member who is promoted shall be evaluated after a sixty (60) day period. If the employee fails the evaluation, the employee shall be placed in the previous position.

3. A non-probationary bargaining unit member shall be evaluated annually by the supervisor and additionally as needed pursuant to the provisions of Section 10.2 (A) hereafter.

4. Written evaluations shall be prepared by the employee's supervisor who has first-hand knowledge of the employee's work. The evaluation shall be limited to the employee's performance of the duties described in the job description and as contained and described in the evaluation document. The employee shall be given a copy of the evaluation. If an employee disagrees with the evaluation, the employee may place a written response, signed by the employee, in the employee's personnel file with a copy thereof served upon the evaluating supervisor.

## Section 10.3  Personnel File

The Director of Human Resources shall maintain a separate personnel file which shall include all written materials concerning discipline but not contain a supervisor's notes and records relating to grievances and arbitrations. Personnel records so maintained shall be among the records used in proceedings affecting the status of an employee.

Materials to be placed in a personnel file by the appropriate supervisor shall bear that supervisor's name and shall be dated upon the date of placement. Copies of materials so placed in a personnel file shall be delivered to the affected employee.

Employees shall have the right, upon written request, to review the contents of their own personnel file. An employee may be accompanied by a Union representative or may, by written authorization and consent, authorize a Union representative to inspect the employee's personnel file at a reasonable time. Employees may, when they deem it appropriate, submit statements concerning any material contained in such file. Any statements so submitted by an employee shall be made part of the file for so long as the material giving rise to the employee's response remains in the file. A copy of the response shall be served upon the appropriate supervisor or other person who originally placed the material in the file which gave rise to the response.

Disciplinary letters, written reprimands, or other such personnel actions dealing with tardiness, absenteeism, or abuse of sick leave shall be removed from the personnel file within one (1) year of such an occurrence should there be satisfactory improvement in the employee's performance.

All materials dealing with discipline issues other than those above shall, should there be satisfactory improvement in the employee's performance, be removed from the personnel file within two (2) years of each occurrence.

# Article XI  Health and Safety

## Section 11.1  Applicability

The Board agrees that it shall take all reasonable means to provide a safe and hazard-free workplace for its employees.

No employee shall be required to work under conditions which are unsafe or hazardous. However, unless the work is a clear and present danger to the employee's safety, the employee shall perform the work as required or directed and may grieve the requirement to perform unsafe work.

## Section 11.2  Access to Information and Records

The Board agrees that the Union may have access to current material data compliance reports submitted to it by manufacturers and vendors as required under applicable law.

The Board further agrees, upon the written authorization of an employee covered by this Agreement, that the Union may have access to those applicable injury and illness records maintained by the Board for OSHA and worker compensation purposes as they relate to that specific employee.

## Section 11.3  Employee Work Refusal

In the event any employee refuses to perform any such work under this Section, the employee shall receive no pay for work not performed, unless the work is found to be unsafe. In the event the work is found to be unsafe either through the grievance procedure or by an arbitrator, the employee shall receive pay for all time lost as a result of not performing such work.

No employee shall utilize the provisions of this Article for the purpose of causing any concerted activity prohibited in this Agreement nor to refuse to perform work or effectuate the withdrawal of services.

## Section 11.4  Protective Equipment

Upon the express understanding that employees are required to wear protective equipment provided by the Board, the Board agrees to provide employees, where appropriate, with necessary protective equipment, including but not limited to, safety glasses and wrist rests.

Neglect or willful refusal to wear or utilize such provided necessary protective equipment shall result in the imposition of discipline up to and including discharge.

## Section 11.5  Video Display Terminals

The Board and the Union recognize the need to furnish appropriate equipment and materials to enhance the effectiveness of the workplace and the efficiency and productivity of Board employees. The Board agrees that, over the term of this Agreement, it will undertake the making of changes in work stations, furniture, and other appropriate equipment so as to provide for efficiency promoting work materials and equipment.

The Board shall implement these changes starting with the video display stations most in use.

## Section 11.6  Ergonomic Keyboards

All bargaining unit members utilizing computers shall have the option to request ergonomic keyboards. Such requests shall be made in writing to the Director of Human Resources.

## Section 11.7  Uniforms and Laboratory Coats

The current policy on uniforms for the Technical Laboratory Assistant shall remain in full force and effect.

# Article XII  Grievance Procedure

## Section 12.1  Objective

It is the declared objective of the Board and the Union to encourage the prompt resolution of the grievances and complaints of the employees covered by this Agreement as they arise, and to provide recourse to orderly procedures for the satisfactory adjustment of grievances and complaints. In that light, every reasonable attempt shall be made to resolve problems through discussions and communications with the appropriate supervisor who is outside the bargaining unit.

The Director of Human Resources shall establish and maintain a grievance tree by position and employee indicating the non-bargaining unit supervisor appropriate for discussions and communications.

## Section 12.2  Definition of Grievance

A grievance shall mean a written complaint by an employee, a group of employees, or the Union that there has been a violation of the specific and express terms of this Agreement, Board policy, or work rules.

However, a grievance shall not be processed where the Board has retained sole and exclusive right to take action under the provisions of the Illinois Educational Labor Relations Act. Any stated exception to the Board's sole and exclusive rights shall be grievable under this grievance procedure.

## Section 12.3  Pre-Grievance Consultation

The Board and the Union agree that a number of potential grievances may be avoided if the affected employee and the appropriate supervisor who is outside the bargaining unit are able to discuss and resolve problems by these means. There may be occasions, however, when the employee believes that, although the defined problem might be resolved by such discussions, the employee would prefer that such consultations and discussions be held on an informal basis by a Board representative and a representative of the Union.

In such cases, the employee may contact the Union representative, who shall be either the Union Grievance Chair or Union President, to set forth the problem area. Thereupon the Union representative shall contact the Director of Human Resources. Such request shall be presented within ten (10) days of the alleged grievable occurrence.

A pre-grievance consultation is mandatory. The content of these discussions shall not be used in the processing of grievances. If the potential grievance is not resolved by this procedure, then in that event, the filing of a grievance at Step 1 shall commence.

The time limit for filing a grievance provided for in Section 12.4 hereof shall be tolled until the pre-grievance consultation is held, and shall commence on the first working day thereafter.

## Section 12.4  Grievance Steps

The following three (3) step procedure is the exclusive remedy for employees and the Union concerning all matters arising under this Agreement. The designee of the Board, at each successive Step provided for in this procedure, shall be someone who has more authority than the person at the previous Step.

All grievances shall be processed as follows.

**Step 1**   An employee covered by this Agreement or the Union, in the case of any Union grievance, shall submit the grievance, in writing, indicating the provision of this Agreement, Board policy, or work rule(s) alleged to be involved and the relief requested to the Director of Human Resources. The Vice President shall arrange for a meeting with the grievant and Union within ten (10) working days of receipt of the written grievance to fully discuss the subject matter thereof. The Vice President shall provide a written answer to the grievant and the Union representative within ten (10) working days after said meeting.

**Step 2**   If the grievance is not settled in Step 1 and the grievant and the Union wish to appeal, the grievance may be appealed by the grievant and the Union, in writing to the President within ten (10) working days after the answer in Step 1. Such grievance shall be signed by both the individual grievant and the Union representative, and shall include a statement of the provision(s) of this Agreement, Board policy, or work rule(s) alleged to be involved and of the relief requested.

The President shall discuss the grievance, within ten (10) working days, with the grievant and the Union representative, at a time mutually agreeable to the parties.

If a settlement is reached pursuant to the provisions of this Step, the said President shall issue a written agreement signed by the President, the grievant, and the Union representative.

If no settlement is reached, the President shall give a written answer to the grievant and the Union within ten (10) working days following their meeting.

**Step 3**   If the grievance is not settled in accordance with the foregoing procedure, the grievant and the Union may serve written notice of intention to arbitrate within ten (10) working days after receipt of the answer in Step 2.

The Board and the Union agree that it is in the best interests of all parties that matters of arbitration be resolved in the most fair and expedited manner possible with a minimization of costs and expenses.

In light of this mutual interest, the Board and the Union agree that the selection of a permanent arbitrator for the term of this collective bargaining agreement is consonant with such mutual interest. Accordingly, the Board and the Union agree that, within sixty (60) days of the execution of this collective bargaining agreement, a consenting permanent arbitrator shall be selected, with such agreement becoming a part of this Agreement.

Thereafter, all matters of arbitration shall be mutually referred to such arbitrator.

## Section 12.5  Authority of Arbitrator

Neither the Board nor the aggrieved party shall be permitted to assert any grounds before the arbitrator which were not previously disclosed in writing to the other party. The arbitrator shall have no right to alter, amend, modify, nullify, ignore, enlarge, add to, delete, subtract from, or change the provisions of this Agreement, applicable work rules, or any applicable Board policy. The arbitrator shall consider and decide only the specific issue(s) submitted in writing and shall have no authority to make any decision or recommendation on any other issue not submitted. The arbitrator shall be without power to make decisions contrary to or inconsistent with or modifying or varying in any way the applicable laws and rules and regulations having the force and effect of law.

The arbitrator shall submit a decision, in writing, within thirty (30) calendar days following the close of the hearing or the submission of briefs by the parties, whichever is later. The arbitrator's decision shall be based solely upon the interpretation of the meaning or application of the specific terms of

this Agreement, Board policy, or applicable work rules involved to the facts of the grievance presented. The decision of the arbitrator shall be final and binding on the parties and shall be immediately implemented.

## Section 12.6  Expense of Arbitration

The fees and expenses of the arbitrator and the cost of a written transcript provided to the arbitrator at the arbitrator's request shall be divided equally between the Board and the Union.

In the event that the arbitrator does not request a transcript and a party desires and requests a transcript of the proceedings, that party shall bear the full cost of such transcript. If both parties request a transcript, the cost shall be equally divided.

All other expenses shall be borne solely by the party incurring them.

Unless the parties mutually agree otherwise, arbitration hearings shall be held at the College.

## Section 12.7  Time Limits for Filing

No grievance shall be entertained or processed unless it is submitted within ten (10) working days after the grievant had knowledge, or should have had knowledge, of the alleged violation giving rise to the grievance. Time limits may be extended only by written mutual agreement. Failure to communicate a decision within the specified time limits shall automatically move the grievance to the next step. Failure by the grievant and the Union to take action in the grievance structure by the specified time limits shall constitute a waiver by the grievant and the Union of any further rights to pursue the grievance.

## Section 12.8  Time of the Essence

The parties agree that the objective of time limits, as provided for herein, is to effectuate a final conclusion of the subject matter of the grievance. In regard thereto, the parties specifically declare and agree that time is of the essence in the performance of all obligations pursuant to this Article and the Sections thereof.

The parties desire and mutually agree that the provisions of this Article and all Sections hereunder shall be strictly construed.

The parties, however, understand and agree that time limits may be extended by the parties through the execution of a mutually agreed upon written agreement.

Upon the asserted failure of either party to perform any act required by the time specified, barring mutual resolution thereof, the parties shall jointly submit the matter of such failure to expedited binding arbitration as provided in Article XII, Section 4, Step 3 et. Seq.

## Section 12.9  Miscellaneous Provisions

A. All disputes arising under this Agreement shall be resolved either by agreement or through the grievance procedure. Concerning matters arising outside of the provisions of this Agreement, wherever applicable, employees shall utilize other channels for amelioration of complaints or disagreements not specifically covered by any provisions of this Agreement.

B. Forms, mutually agreed upon, for the filing of grievances shall be prepared by the College and given appropriate distribution so as to facilitate the operation of the grievance procedure.

C.  Nothing contained in this Article shall prevent the parties from settling an alleged grievance to their mutual satisfaction prior to the issuance of the arbitrator's decision.

D.  Conferences, meetings, and hearings held pursuant to the grievance procedure shall be set by mutual agreement.

E.  The Union representative shall inform the Board, in writing, of all persons authorized to settle grievances on a Step or to advance grievances to the next Step. Only those persons shall settle or advance such grievances. The appeals and answers provided at each Step of the grievance procedure shall be in writing and shall fully set forth the reasons therefore.

F.  Attendance at meetings and hearings held under this grievance procedure shall be limited to those persons specified in the procedure, witnesses, resource people required by either party, and legal counsel for the parties. These meetings shall be scheduled at a time and place mutually agreeable to the Board and the Union. No employee entitled to be present shall suffer loss of pay because of participation in this grievance procedure.

G.  Any grievance settled at Step 1 shall not be a precedent.

H.  When the Union files a grievance involving an individual Union member or a group of Union members, such grievance shall be signed by the Union representative.

I.  Any individual who files a grievance shall sign such grievance. Groups of individuals shall each individually subscribe a joint grievance. A Union grievance shall be signed by the Union representative.

J.  The filing or pendency of any grievance under the provisions of this Article shall not prevent the Board and its administration from taking the action complained of, subject however, to the final decision on the grievance.

K.  The grievance and arbitration procedures of this Agreement shall not apply to any matter as to which the Board is without authority to act or concerning which the Union is not authorized to represent employees covered by this Agreement.

L.  Nothing contained in this Article or elsewhere in this Agreement shall be construed to deny to the Board, the Union, or any employee their rights under applicable law, resolutions, rules, or regulations having the force and effect of law.

# Article XIII  Leaves of Absence

## Section 13.1  Part-Time Benefits

Effective July 1, 1998, all employees who work less than thirty-seven and one-half (37.5) hours per week shall receive three and one-half (3.5) days off with pay.  These days may be used as sick days, vacation days, or holidays.

Effective July 1, 1999, all employees who work less than thirty-seven and one-half (37.5) hours per week shall receive four (4) days off with pay.  These days may be used as sick days, vacation days, or holidays.

Such days shall consist of the number of hours worked by each such employee on their normal work day.

## Section 13.2  Bereavement Leave

A full-time employee may use three (3) days of bereavement leave following the death of an immediate family member.  Additional leave may be granted at the discretion of the Director of Human Resources.

## Section 13.3  Personal Emergency Leave

Each full-time bargaining unit employee shall be credited with two (2) days of personal emergency leave each benefit year.

Personal emergency leave may be used to accommodate events such as a critical illness or marriage in one's immediate family, transportation difficulty, court attendance, or for other emergency situations which cannot be taken care of during non-work hours.

Whenever possible, personal emergency leave requests should be submitted and approved in advance by the employee's supervisor.  Personally compelling and highly confidential requests may be submitted orally to the Director of Human Resources.  If needed, additional personal emergency leave may be approved.  Additional personal emergency leave shall be charged against the bargaining unit employee's accumulated sick leave.

Emergency leave days which remain unused at the end of each contract year shall be converted to sick leave days and credited to the sick leave account of each employee.  The leave provided for in this Section is available only to full-time bargaining unit employees as defined in this Agreement.

## Section 13.4  Vacation Leave

A full-time bargaining unit member receives paid vacation leave according to the following schedule:

| Length of Service | Vacation Leave |
|---|---|
| 1 through 11 months | 5/6 days per month |
| 1 through 5 years | 10 days per year |
| 6 through 10 years | 15 days per year |
| 11 through 15 years | 18 days per year |
| 16 years and over | 20 days per year |

Except for unforeseen emergencies, vacation leave should be scheduled as far in advance as possible. Vacation leave requests must be approved by a full-time bargaining unit member's supervisor, area administrator, and the appropriate vice president. Vacation leave in excess of two (2) continuous weeks ordinarily is not granted. All vacation leave must be used by the end of the benefit year in which it is earned. Vacation leave does not carry over from one year to the next, except with the written approval of the supervisor, area administrator, appropriate vice president, and President.

All unused vacation leave, computed at a full-time bargaining unit member's daily rate of compensation, is paid to the full-time bargaining unit member or beneficiary in the event of termination, retirement, or death. Vacation leave for a full-time bargaining unit member who terminates employment prior to the end of the benefit year is prorated. Part-time, temporary, and casual employees are not entitled to this benefit.

## Section 13.5 Sick Leave

A full-time bargaining unit member earns sick leave at the rate of one (1) day per month worked. Unused sick leave carries over into the next benefit year. There is no maximum limit on the amount of sick leave that can be accumulated.

When a bargaining unit member is unable to report to work because of illness or injury, the supervisor (or the Campus Safety Office when the Switchboard is closed) must be notified as soon as possible, but no later than fifteen (15) minutes after the bargaining unit member's shift is scheduled to begin. The supervisor should be notified each day that a bargaining unit member is absent from work.

Morton College reserves the right to require a bargaining unit member to furnish a physician's statement describing the nature of the illness or injury and indicating when the bargaining unit member may return to work. Morton College may also require a bargaining unit member to visit a physician chosen and paid for by Morton College to verify illness or injury. When a physician's statement is required as proof of illness or injury, paid sick leave will be suspended until the statement is received and approved by the Director of Human Resources. Misuse of sick leave or falsification of documents may result in the loss of pay for the period of time in question or other disciplinary action including termination of employment.

As a general practice, routine dental and medical appointments should not be scheduled during regular work hours. If this is impractical, then medical appointments scheduled during regular work hours shall be charged to sick leave. Whenever possible, such appointments should be made early or late in the work day. Sick leave requests must be approved by the bargaining unit member's supervisor, area administrator, and the appropriate vice president.

While on vacation, days on which a full-time bargaining unit member is confined to a hospital or residence because of a major illness or injury are charged to sick leave. A statement from the treating physician is required in such cases. When a holiday observed by Morton College occurs

during a period of extended illness or injury, the day off is not charged to a bargaining unit member's sick leave.

## Section 13.6  Partial Sick Leave

A full-time bargaining unit member who has worked for Morton College at least six (6) months is credited with partial sick leave at the rate of ten (10) days per year of service. Partial sick leave entitles a full-time bargaining unit member to receive eighty (80) percent of the daily rate of pay for a maximum of sixty (60) work days.

In order to utilize partial sick leave, a full-time bargaining unit member must have exhausted all sick and vacation leave. Part-time, temporary, and casual employees are not entitled to this benefit.

## Section 13.7  Jury Duty Leave

A full-time bargaining unit member who is selected for jury duty suffers no loss of pay. The daily compensation for jury duty is deducted from a bargaining unit member's regular pay from Morton College. Evidence of payment for jury duty must be submitted to the Director of Human Resources. Part-time, temporary, and casual employees are not entitled to this benefit.

## Section 13.8  Holidays Observed

The following days have been approved by the Board as paid holidays and days off for bargaining unit members:

- Martin Luther King Jr.'s Birthday
- Lincoln's Birthday
- General Casimir Pulaski Day
- *The Friday before the Sunday after the full moon that occurs on or after the spring equinox on March 21. If the full moon falls on a Sunday, the following Friday is given as a holiday.
- Memorial Day
- Independence Day
- Labor Day
- Columbus Day
- Veterans' Day
- Thanksgiving Day (and the Friday immediately following)
- Christmas Break (10 work days – four [4] days are considered holidays)
  - Christmas Eve
  - Christmas Day
  - New Year's Eve
  - New Year's Day

*Formerly known as "Good Friday" prior to judicial abolition

A bargaining unit member must work the day before and after a holiday or be on an approved paid leave to receive compensation for the holiday.

If a holiday falls on a day when a bargaining unit member is not normally required to work, arrangements will be made to observe it at another time.

From time-to-time, commemorative days may be designated by the Board.

## Section 13.9 Family Medical Leave Act (FMLA)

FMLA requires covered employers to provide up to twelve (12) weeks of unpaid, job-protected leave to "eligible" employees for certain family and medical reasons. Employees are eligible if they have worked for a covered employer for at least one (1) year, and for one thousand and two hundred and fifty (1,250) hours over the previous twelve (12) months, and if there are at least fifty (50) employees within seventy-five (75) miles.

### A. Reasons for Taking Leave

Unpaid leave must be granted for any of the following reasons:

1. to care for the employee's child after birth, or placement for adoption of foster care

2. to care for the employee's spouse, son or daughter, or parent who has a serious health condition

3. for a serious health condition that makes the employee unable to perform the employee's job

At the employee's or employer's option, certain kinds of paid leave may be substituted for unpaid leave.

### B. Advance Notice and Medical Certification

The employee may be required to provide advance leave notice and medical certification. Taking of leave may be denied if requirements are not met.

1. The employee ordinarily must provide thirty (30) days advance notice when the leave is "foreseeable"

2. An employer may require medical certification to support a request for leave because of a serious health condition, and may require second and third opinions (at the employer's expense) and a fitness for duty report to return to work

### C. Job Benefits and Protection

1. For the duration of FMLA leave, the employer must maintain the employee's health coverage under any "group health plan"

2. Upon return from FMLA leave, most employees must be restored to their original or equivalent positions with equivalent pay, benefits, and other employment terms

3. The use of FMLA leave cannot result in the loss of any employment benefit that accrued prior to the start of an employee's leave

### D. Unlawful Acts by Employers

FMLA makes it unlawful for any employer to:

1. interfere with, restrain, or deny the exercise of any right provided under FMLA

2. discharge or discriminate against any person for opposing any practice made unlawful by FMLA or for involvement in any proceeding under or relating to FMLA

E. Enforcement

1. The U.S. Department of Labor is authorized to investigate and resolve complaints of violations

2. An eligible employee may bring a civil action against an employer for violations

FMLA does not affect any federal or state law prohibiting discrimination, or supersede any state or local law or collective bargaining agreement which provides greater family or medical leave rights.

## Section 13.10  Disability Leave

A full-time bargaining unit member who is judged by a physician to be unable to work because of a temporary or permanent disability, eligible for benefits provided under FMLA, and who has exhausted all other entitled paid leaves is placed on an unpaid disability leave for a maximum of one (1) year. While on disability leave, an employee must submit, as requested, a physician's statement indicating ability to work. Morton College may require an employee to visit a physician chosen and paid for by Morton College to verify disability.

No compensation shall be paid by Morton College to such a full-time employee on disability leave. However, all insurance benefits remain in force provided that the employee makes all necessary employee contributions. Before returning to work, an employee on disability leave must provide the Director of Human Resources with a physician's statement indicating approval to resume all job duties.

If upon the termination of a disability leave it is not possible for a full-time bargaining unit member to return to the same position, all reasonable efforts shall be made to arrange a transfer to a comparable position with approximately the same salary range. If such a transfer is not possible, then in that event, the employee shall go on layoff status pursuant to the provisions of Article VII, Sections 7.6 and 7.7 of this Agreement.

Sick, partial sick, personal emergency, and vacation leaves do not accrue while a full-time bargaining unit member is on disability leave. Part-time, temporary, and casual employees are not entitled to this benefit.

If a disabled employee returns to work and within thirty (30) days again becomes disabled from the same cause, it shall be considered the same disability. If the employee becomes disabled after working thirty (30) days but less than one (1) year, the employee shall be eligible for the unused portion of the original disability leave. After working one (1) year, the employee shall be eligible for a disability leave not to exceed one (1) year.

Disability leave shall not be available until a new employee has completed one (1) year of service unless the disability is caused by an accident. In that event, the duration of the leave shall equal the number of months the employee has worked for the College.

# Article XIV  Educational Benefits

## Section 14.1  Tuition Waiver and Reimbursement for Full-Time Bargaining Unit Members

A.  A full-time bargaining unit member, spouse, or tax dependent may receive a tuition waiver for credit and non-credit courses offered by Morton College. A full-time bargaining unit member is responsible for the payment of all required course fees and books and may use monies granted under Section 14.1C for these expenses. Tuition waiver forms are available in the Office of Human Resources.

B.  A full-time bargaining unit member is also entitled to full reimbursement for tuition and books for one (1) class per semester for job-related courses approved by the supervisor, area administrator, and appropriate vice president taken outside of Morton College at another fully accredited college. In no case shall the reimbursement exceed the employee's out-of-pocket expense. Reimbursement is made after the bargaining unit member presents evidence of successful completion of the course to the Director of Human Resources.

C.  If this option is not used, a full-time bargaining unit member, who does not apply for reimbursement under Section 14.1B is entitled to a maximum of two hundred and fifty (250) dollars during the benefit year for professional expenses including, but not limited to, seminars, workshops, books and fees for courses taken at Morton College, and courses for approved job-related activities. A full-time bargaining unit member is not entitled to both 14.1B and 14.1C unless both options cost two hundred and fifty (250) dollars or less. Reimbursement for authorized expenses will be made upon presentation of required documentation to the Director of Human Resources.

D.  Employees may assign to another bargaining unit member, part or all of the $250 in 14.1C. The assignment must be in writing and pre-approved by the Supervisor of the Department, Department of Human Resources and the appropriate Vice President. The employee may receive no more than $250 in assigned money. The assigned money must be used for job related tuition, workshops and seminars.

## Section 14.2  Tuition Waiver for Part-Time Bargaining Unit Members

A part-time bargaining unit member shall receive a tuition waiver for one (1) course per semester at Morton College. The course may be for credit or non-credit. A part-time bargaining unit member is responsible for the payment of all required course fees. Tuition waiver forms are available in the Human Resources.

## Section 14.3  Compensation for Educational Improvement

Employees shall receive a one-time only stipend for completion of an Associate's Degree, Bachelor's Degree or Master's Degree.  The following criteria shall apply:

A. An employee will be eligible for only one stipend at each level of educational attainment.

B. Employees currently holding one or more of the above degrees are ineligible for stipends for those degrees.

C. Stipends will be awarded as follows:

| | |
|---|---|
| Associate's Degree | $250 |
| Bachelor's Degree | $250 |
| Master's Degree | $500 |

Stipends will be awarded upon completion of the program and submission of proof of completion to the Director of Human Resources.

# Article XV  Benefits

## Section 15.1  Medical, Dental, Vision, and Long-Term Care Insurance

A.     The Board agrees to provide the same medical benefits including, but not limited to, medical, dental, vision and long-term health care insurance. These benefits shall be granted to all full-time bargaining unit employees and their dependents to the extent provided herein as those granted to full-time members of the faculty at Morton College.

B.     For fiscal year 2005, insurance costs, including premiums, co-payments and deductibles, shall be frozen.

## Section 15.2  Life Insurance

The Board shall provide thirty-five thousand (35,000) dollars of term life insurance at no cost to full-time employees. Additional term life insurance for the employee and his or her dependents shall be available at the time of employment and during open enrollment periods. The premiums shall be paid by the employee.

## Section 15.3  IRS Section 125

A full-time employee is eligible to participate in the Morton College Flexible Benefits Program. The program includes premium conversion, medical reimbursement, and dependent care components; and conforms to provisions contained in Internal Revenue Service Section 125.

## Section 15.4  Credit Union

An employee is eligible to apply for membership in the Hawthorne Credit Union or the College and University Credit Union.

# Article XVI  Salary Ranges, Hiring Wage Guidelines, and Compensation

## Section 16.1  Salary Ranges

A.    Effective July 1, 2001, all minimums shall be increased by 3%.

B.    Effective July 1, 2002, all minimums shall be increased by 3%.

C.    Effective July 1, 2003, all minimums shall be increased by 3%.

D.    Effective July 1, 2004, all minimums shall be increased by 3%.

E.    Effective July 1, 2001, all maximums shall be increased by 3.1%.

F.    Effective July 1, 2002, all maximums shall be increased by 3.1%.

G.    Effective July 1, 2003, all maximums shall be increased by 3.1%.

H.    Effective July 1, 2004, all maximums shall be increased by 3.1%.

Full-time employees shall be compensated according to the salary ranges shown below:

| Job Title | FY 02 | | FY 03 | | FY 04 | | FY 05 | |
|---|---|---|---|---|---|---|---|---|
| | Minimum | Maximum | Minimum | Maximum | Minimum | Maximum | Minimum | Maximum |
| **Range I** | | | | | | | | |
| Account Clerk | $20,198 | $31,342 | $20,804 | $32,314 | $21,428 | $33,316 | $22,071 | $34,349 |
| Account Payable Clerk | $20,198 | $31,342 | $20,804 | $32,314 | $21,428 | $33,316 | $22,071 | $34,349 |
| Admissions and Records Clerk II | $20,198 | $31,342 | $20,804 | $32,314 | $21,428 | $33,316 | $22,071 | $34,349 |
| LRC Technical Assistant II | $20,198 | $31,342 | $20,804 | $32,314 | $21,428 | $33,316 | $22,071 | $34,349 |
| Course Scheduler/Event Reservation Specialist | $20,198 | $31,342 | $20,804 | $32,314 | $21,428 | $33,316 | $22,071 | $34,349 |
| Switchboard Operator | $20,198 | $31,342 | $20,804 | $32,314 | $21,428 | $33,316 | $22,071 | $34,349 |
| **Range II** | | | | | | | | |
| Administrative Assistant | $23,000 | $35,693 | $23,690 | $36,800 | $24,401 | $37,941 | $25,133 | $39,117 |
| Admissions and Records Clerk I | $23,000 | $35,693 | $23,690 | $36,800 | $24,401 | $37,941 | $25,133 | $39,117 |
| Adult Education Records Specialist | $23,000 | $35,693 | $23,690 | $36,800 | $24,401 | $37,941 | $25,133 | $39,117 |
| Assistant Bookstore Manager | $23,000 | $35,693 | $23,690 | $36,800 | $24,401 | $37,941 | $25,133 | $39,117 |
| Computer Operator | $23,000 | $35,693 | $23,690 | $36,800 | $24,401 | $37,941 | $25,133 | $39,117 |
| Coordinator of Duplication Services | $23,000 | $35,693 | $23,690 | $36,800 | $24,401 | $37,941 | $25,133 | $39,117 |
| Equipment Manager | $23,000 | $35,693 | $23,690 | $36,800 | $24,401 | $37,941 | $25,133 | $39,117 |
| Financial Aid Assistant | $23,000 | $35,693 | $23,690 | $36,800 | $24,401 | $37,941 | $25,133 | $39,117 |
| Payroll Clerk | $23,000 | $35,693 | $23,690 | $36,800 | $24,401 | $37,941 | $25,133 | $39,117 |
| Program Specialist | $23,000 | $35,693 | $23,690 | $36,800 | $24,401 | $37,941 | $25,133 | $39,117 |
| Technical Laboratory Assistant | $23,000 | $35,693 | $23,690 | $36,800 | $24,401 | $37,941 | $25,133 | $39,117 |
| **Range III** | | | | | | | | |
| ABE, GED, ESL Specialist | $26,018 | $40,374 | $26,798 | $41,626 | $27,602 | $42,916 | $28,430 | $44,246 |
| Computer Programmer | $26,018 | $40,374 | $26,798 | $41,626 | $27,602 | $42,916 | $28,430 | $44,246 |
| Coordinator of Service Center | $26,018 | $40,374 | $26,798 | $41,626 | $27,602 | $42,916 | $28,430 | $44,246 |
| Enrollment Specialist | $26,018 | $40,374 | $26,798 | $41,626 | $27,602 | $42,916 | $28,430 | $44,246 |
| Graphic Designer | $26,018 | $40,374 | $26,798 | $41,626 | $27,602 | $42,916 | $28,430 | $44,246 |
| LEP Student Specialist | $26,018 | $40,374 | $26,798 | $41,626 | $27,602 | $42,916 | $28,430 | $44,246 |
| LRC Technical Assistant I | $26,018 | $40,374 | $26,798 | $41,626 | $27,602 | $42,916 | $28,430 | $44,246 |
| Publications Specialist | $26,018 | $40,374 | $26,798 | $41,626 | $27,602 | $42,916 | $28,430 | $44,246 |
| Registrar | $26,018 | $40,374 | $26,798 | $41,626 | $27,602 | $42,916 | $28,430 | $44,246 |
| Student Activities Assistant | $26,018 | $40,374 | $26,798 | $41,626 | $27,602 | $42,916 | $28,430 | $44,246 |

Board-Union Agreement

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Range IV** | | | | | | | | |
| Coordinator of Special Populations Services | $29,716 | $53,540 | $30,607 | $55,200 | $31,525 | $56,911 | $32,471 | $58,675 |
| Fitness Center Technician | $29,716 | $53,540 | $30,607 | $55,200 | $31,525 | $56,911 | $32,471 | $58,675 |
| Microcomputer Support Specialist II | $29,716 | $53,540 | $30,607 | $55,200 | $31,525 | $56,911 | $32,471 | $58,675 |
| Placement Specialist | $29,716 | $53,540 | $30,607 | $55,200 | $31,525 | $56,911 | $32,471 | $58,675 |
| Telecommunications & AV Technician | $29,716 | $53,540 | $30,607 | $55,200 | $31,525 | $56,911 | $32,471 | $58,675 |
| **Range V** | | | | | | | | |
| Academic Advisor | $33,444 | $60,262 | $34,447 | $62,130 | $35,481 | $64,056 | $36,545 | $66,042 |
| Coordinator of Student Activities | $33,444 | $60,262 | $34,447 | $62,130 | $35,481 | $64,056 | $36,545 | $66,042 |
| Learning Assistance Specialist | $33,444 | $60,262 | $34,447 | $62,130 | $35,481 | $64,056 | $36,545 | $66,042 |
| Microcomputer Support Specialist I | $33,444 | $60,262 | $34,447 | $62,130 | $35,481 | $64,056 | $36,545 | $66,042 |
| Systems Analyst | $33,444 | $60,262 | $34,447 | $62,130 | $35,481 | $64,056 | $36,545 | $66,042 |
| Testing Specialist | $33,444 | $60,262 | $34,447 | $62,130 | $35,481 | $64,056 | $36,545 | $66,042 |
| **Range VI** | | | | | | | | |
| Bookstore Manager | $38,471 | $69,314 | $39,625 | $71,463 | $40,813 | $73,678 | $42,038 | $75,962 |
| Coordinator of Adult Education | $38,471 | $69,314 | $39,625 | $71,463 | $40,813 | $73,678 | $42,038 | $75,962 |
| Coordinator of Athletics | $38,471 | $69,314 | $39,625 | $71,463 | $40,813 | $73,678 | $42,038 | $75,962 |
| Coordinator of Financial Aid | $38,471 | $69,314 | $39,625 | $71,463 | $40,813 | $73,678 | $42,038 | $75,962 |
| Coordinator of Microcomputer Networks | $38,471 | $69,314 | $39,625 | $71,463 | $40,813 | $73,678 | $42,038 | $75,962 |
| Grants Writer | $38,471 | $69,314 | $39,625 | $71,463 | $40,813 | $73,678 | $42,038 | $75,962 |

Board-Union Agreement

## Section 16.2  Salary Adjustments

**A.**  Salary Adjustment in FY 02

Full-time bargaining unit members hired before June 30, 2001, whose salary increases are not covered by Sections 17.2 or 17.3 shall receive a 4.4 percent salary increase up to the maximum of the salary range for their position.

**B.**  Salary Adjustment in FY 03

Full-time bargaining unit members hired before June 30, 2002, whose salary increases are not covered by Sections 17.2 or 17.3 shall receive a 4.45 percent salary increase up to the maximum of the salary range for their position.

**C.**  Salary Adjustment in FY 04

Full-time bargaining unit members hired before June 30, 2003, whose salary increases are not covered by Sections 17.2 or 17.3 shall receive a 4.45 percent salary increase up to the maximum of the salary range for their position.

**D.**  Salary Adjustment in FY 05

Full-time bargaining unit members hired before June 30, 2004, whose salary increases are not covered by Sections 17.2 or 17.3 shall receive a 4.8 percent salary increase up to the maximum of the salary range for their position.

## Section 16.3  Part-Time Hiring Wage Guidelines

Effective July 1, 2001, all minimum wages shall be increased 25 cents per hour.

Effective July 1, 2002, all minimum wages shall be increased 25 cents per hour.

Effective July 1, 2003, all minimum wages shall be increased 25 cents per hour.

Effective July 1, 2004, all minimum wages shall be increased 25 cents per hour.

The following hiring wage guidelines shall be used to establish the minimum wage for part-time employees. It is understood by both parties that adjustments to the guidelines may be made from time-to-time.

| Job Title | FY 02 Minimum | FY 03 Minimum | FY 04 Minimum | FY 05 Minimum |
|---|---|---|---|---|
| **Range A** | | | | |
| Admissions and Records Clerk II | $7.00 | $7.25 | $7.50 | $8.00 |
| LRC Technical Assistant II | $7.00 | $7.25 | $7.50 | $8.00 |
| Service Aide | $7.00 | $7.25 | $7.50 | $8.00 |
| Support Secretary | $7.00 | $7.25 | $7.50 | $8.00 |
| **Range B** | | | | |
| Computer Laboratory Paraprofessional | $8.25 | $8.50 | $8.75 | $9.00 |
| Data Center Paraprofessional | $8.25 | $8.50 | $8.75 | $9.00 |
| Fitness Center Specialist | $8.25 | $8.50 | $8.75 | $9.00 |
| GED Test Proctor | $8.25 | $8.50 | $8.75 | $9.00 |

Board-Union Agreement

| | | | | |
|---|---|---|---|---|
| Site Supervisor | $8.25 | $8.50 | $8.75 | $9.00 |
| **Range C** | | | | |
| Academic Skills Center Specialist | $9.25 | $9.50 | $9.75 | $10.00 |
| Academic Skills Center ESL Specialist | $9.25 | $9.50 | $9.75 | $10.00 |
| Coordinator of Child Learning Center | $9.25 | $9.50 | $9.75 | $10.00 |
| Fitness Center Technician | $9.25 | $9.50 | $9.75 | $10.00 |
| Microcomputer Support Specialist III | $9.25 | $9.50 | $9.75 | $10.00 |
| Peer Tutor Training Specialist | $9.25 | $9.50 | $9.75 | $10.00 |
| Seminars Coordinator | $9.25 | $9.50 | $9.75 | $10.00 |
| Seminars Coordinator — Family Literacy | $9.25 | $9.50 | $9.75 | $10.00 |
| **Range D** | | | | |
| Academic Advisor II | $10.75 | $11.00 | $11.25 | $11.50 |
| Accounting Clerk | $10.75 | $11.00 | $11.25 | $11.50 |
| Microcomputer Support Specialist II | $10.75 | $11.00 | $11.25 | $11.50 |
| **Range E** | | | | |
| Academic Advisor I | $12.25 | $12.50 | $12.75 | $13.00 |
| **Range F** | | | | |
| Alternate Chief Examiner — GED Test | $15.25 | $15.50 | $15.75 | $16.00 |
| Microcomputer Support Specialist I | $15.25 | $15.50 | $15.75 | $16.00 |
| Project Coordinator | $15.25 | $15.50 | $15.75 | $16.00 |

## Section 16.4  Part-Time Wage Adjustments

**A.   Wage Adjustment in FY 02**

Part-time bargaining unit members hired before June 30, 2001 shall receive a 4.4 percent wage increase or the minumum of the new pay range or whichever is greater.

**B.   Wage Adjustment in FY 03**

Part-time bargaining unit members hired before June 30, 2002 shall receive a 4.45 percent wage increase or the minumum of the new pay range or whichever is greater.

**C.   Wage Adjustment in FY 04**

Part-time bargaining unit members hired before June 30, 2003 shall receive a 4.45 percent wage increase or the minumum of the new pay range or whichever is greater.

**D.   Wage Adjustment in FY 05**

Part-time bargaining unit members hired before June 30, 2004 shall receive a 4.8 percent wage increase or the minumum of the new pay range or whichever is greater.

## Section 16.5  Longevity Pay

Longevity pay will be granted each year to those bargaining unit members who achieve the following bargaining unit service years as of July 1 of each contract year. This does not become a part of the members' base hourly rate.  The payment will be made on the first payroll in December.

| 11-15 years | $300 |
| 16-20 years | $450 |
| 21 years and over | $600 |

Regular part-time employees shall receive longevity pay as follows:

| 11-15 years | $150 |
| 16-20 years | $225 |
| 21 years and over | $300 |

## Section 16.6  New Employees

New employees hired at more than the mid-point of the salary range shall not receive a salary increase until they have completed one (1) year of service.

## Section 16.7  Proration of Salary and Benefits

The annual salary and vacation and emergency leave benefits of a full-time bargaining unit member who begins employment after the first day of the fiscal year are prorated. The prorations are based upon the number of work days remaining in the fiscal year. Similar calculations are performed whenever a full-time bargaining unit member terminates employment before the end of the fiscal year. A reduction in the amount of a full-time bargaining unit member's final paycheck may occur as a result of these calculations and adjustments.

The leave benefits extended to a part-time bargaining unit member who begins employment after the first day of the fiscal year are prorated. An adjustment to the leave benefit is made whenever a part-time bargaining unit member terminates employment before the end of the fiscal year. This may result in a reduction in the amount of the final paycheck a part-time bargaining unit member receives.

# Article XVII  Position Classifications

## Section 17.1  Classification Review

The Board and the Union shall establish an eight (8) person Classification Review Committee. The committee shall be comprised of four (4) representatives appointed by the Board and four (4) representatives appointed by the Union.  Appointments shall be made so as to ensure that each division within the college is represented.

The committee shall meet in February of each year to review job classifications based upon the recommendations of the Union representatives.  The committee shall review no more than five (5) job classifications per year.

The committee shall examine the job classifications and make recommendations based upon the job descriptions of comparable positions at other colleges and internal equity and worth.

After the committee makes a recommendation, the President shall forward the recommendation of the committee to the Board for final action.

## Section 17.2  Compensation Adjustment

Bargaining unit employees moved to a higher job classification shall receive a ten (10) percent increase in salary or the minimum of the new classification, whichever is greater.

The salary increase shall be prospective and shall be effective on July 1 of the succeeding fiscal year in which the committee reviewed the position.

## Section 17.3  Salary Range Adjustment

The committee provided for in Section 17.1 may annually consider the minimum and maximum salaries assigned to specific job classification ranges.  The committee must reach consensus before a recommendation to adjust a classification range is made.  If there is no consensus, the range shall remain the same.

After the committee makes a recommendation, the President shall forward the recommendation of the committee to the Board for final action.

If the Board increases the range, a full-time bargaining unit employee who has worked at the college for less than thirteen (13) months will receive, at a minimum, the new base salary plus .1 percent of the new base salary for each month of service.  A bargaining unit employee with more than thirteen (13) months of service shall receive the new base salary plus 1.2 percent of the new base for the first twelve (12) months of service plus .2 percent of the new base for each of the remaining months of service up to thirty-six (36) months.

# Article XVIII  Past Practice

This Agreement shall supersede and negate any and all alleged conflicting past practices which may have existed or which may have been alleged to exist at the college as of the effective date of this Agreement, but only to the extent that there are provisions in this Agreement that specifically relate to that alleged past practice. The parties agree that any practices which may arise under the provisions and during the term of this Agreement shall conform to the elements enumerated in this Section.

The college agrees that, upon request of the Union, it shall through its administration meet and consult with the Union relative to any past practices pertaining to wages, hours, and conditions of employment.

The parties agree that the following four (4) requirements must exist for an alleged past practice to qualify as a bona fide binding practice whether under the provisions of this Agreement or at any time prior thereto:

A.　The asserted past practice must be reasonably consistent

B.　The asserted past practice must be clearly stated in writing or clearly articulated in an ascertainable manner

C.　The asserted past practice shall have been acted upon

D.　The asserted past practice must be readily ascertainable over a reasonable period of time as a reasonably fixed and established practice accepted by both parties to this Agreement

# Article XIX  Severability

Any article, section, provision, sentence, or clause of this Agreement held to be illegal will not be deemed valid, except to the extent permitted by law.  However, the remainder of this Agreement shall remain in full force and effect for the entire term of the Agreement.

In the event any article, section, provision, sentence, or clause of this Agreement is determined to be invalid by a court of competent jurisdiction, and thereafter no appeal is taken by either party within the appropriate period, the parties shall renegotiate the article, section, provision, sentence, or clause of the Agreement so deemed to be invalid.

# Article XX - Printing of Agreement

The Board shall be responsible for the printing of sufficient copies of the Agreement and shall provide the Union an opportunity to proof the Agreement prior to printing. The cost of printing the Agreement shall be borne by the Board. The Board shall distribute one (1) copy of the Agreement to each bargaining unit member and shall supply twenty (20) copies of the Agreement to the Union.

# Article XXI  Term of Agreement

This Agreement shall be effective July 1, 2001 and shall remain in full force and effect until 11:59 PM June 30, 2005.

# Article XXII Written Notice

Any notice to be given to this Agreement shall be by certified mail, return receipt requested, and shall be completed by and at the time of said mailing. Written notice may also be served by personal delivery of such notice. Proof of such service shall only be by production of a receipted copy of such notice indicating the date of receipt and bearing the signature of a person authorized to so receive such notice.

Notice sent by the Board of the college to the Union shall be addressed as follows:

The President
Morton College Classified Federation
Cook County College Teachers Union AFT, Local 1600
3801 S. Central Avenue
Cicero IL 60804

and

Morton College Classified Union
Cook County College Teachers Union AFT, Local 1600
208 W. Kinzie Street
Chicago IL 60610

Notice sent by the Union to the Board or the college shall be addressed as follows:

The Morton College Board of Trustees
3801 S. Central Avenue
Cicero IL 60804

or

Morton College
Office of the President
3801 S. Central Avenue
Cicero IL 60804

Notice sent by the Board of the college to an employee of the college covered by this Agreement shall be addressed to the employee at the address last listed in the records of the Human Resources Office of the college.

Either party may by like written notice change the address to which such notice is to be given.

EXECUTED THIS 27TH DAY OF SEPTEMBER, A.D., 2001, NUNC PRO TUNC, AT CICERO, ILLINOIS by the undersigned, all having been duly authorized by their respective parties and intending to be legally bound hereby:

**MORTON COLLEGE, COMMUNITY COLLEGE DISTRICT 527, COUNTY OF COOK, STATE OF ILLINOIS**

**MORTON COLLEGE CLASSIFIED STAFF FEDERATION, COOK COUNTY COLLEGE TEACHERS UNION AFT, LOCAL 1600**

_____
Edward F. Ledvina
Chairman of the Board

_____
Linda Oltmann
President

_____
Randy C. Kantner
Secretary

_____
Denise Brown
Vice President

# Appendices

# *Membership Application and Payroll Dues Checkoff Form*

## MORTON COLLEGE CLASSIFIED STAFF UNION

### A Chapter of the Cook County Teachers Union, AFT Local 1600

#### 3801 South Central Avenue, Cicero IL 60804, (708) 656-8000

TO THE BOARD OF TRUSTEES OF COMMUNITY COLLEGE DISTRICT NO. 527

I hereby authorize and direct the Board of Community College District No. 527 through its officers, agents, and employees, to deduct from the portion of my salary due me each pay period, the amount as certified by the Cook County College Teachers Union at the current rate of dues. Such deduction is to start immediately after the date of this authorization.

I further authorize and direct you to transfer and pay such sum so deducted to the Treasurer of the Cook County College Teachers Union, 208 West Kinzie, Chicago, IL 60610.

In consideration of the above described service rendered by the Board of Community College District No. 527, its members, officers, agents, and employees, the undersigned hereby releases and discharges the Board of Community College District No. 527, its members, agents, and employees, of and from any and all liability whatsoever arising as a result of the authorization herein given.

This authorization is revocable by me upon thirty (30) days written notice prior to March 1 or October 1 of any year, to the Cook County College Teachers Union and the Board of Community College District 527, the revocation to become effective March 1 or October 1 of that year, or upon termination of my employment.

_____                          _____
Union Representative                                      Employee Signature

_____
Effective Date

_____                          _____
Social Security Number                                   Home Telephone Number

_____
Last Name, First Name, and Middle Initial (Print)

_____
Street Address, City, State, and Zip Code (Print)

# *Employee Reinstatement of Dues Deduction Authorization*

## Morton College

### TO THE BOARD OF TRUSTEES OF COMMUNITY COLLEGE DISTRICT NO. 527

Pursuant to the terms and conditions of this Collective Bargaining Agreement, upon return to employment at the College from Leave of Absence or Layoff Status, I hereby authorize and direct the Board of Community College District No. 527 through its officers, agents, and employees to commence deduction from the portion of my salary due me each pay period, the current amount now being deducted as and for Union Dues and to transfer and pay that amount to the Treasurer of the Cook County College Teachers Union, 208 West Kinzie, Chicago IL 60610 all pursuant to the payroll dues deduction authorization previously executed by me.

In consideration of the above described service rendered by the Board of Community College District No. 527, its members, officers, agents, and employees, the undersigned hereby releases and discharges the Board of Community College District No. 527, its members, officers, agents, and employees of and from any and all liability whatsoever arising as a result of the authorization herein given.


_____

Employee Signature


_____

Effective Date


_____

Social Security Number

_____

Home Telephone Number


_____

Last Name, First Name, and Middle Initial (Print)


_____

Street Address, City, State, and Zip Code (Print)

# *Employee Recall List Form*

## Morton College

TO THE BOARD OF TRUSTEES OF COMMUNITY COLLEGE DISTRICT NO. 527

I hereby authorize and direct the Board of Community College District No. 527 through its officers, agents, and employees to place my name on the Official Recall List of Morton College in the event of my layoff from employment.

By the placement of my name on said Recall List, I hereby agree that I shall notify the College, in writing, each six (6) months thereafter that I wish to remain on said Recall List. Such written notification shall be on forms as provided to me by the College at the time such layoff may occur. Said written notification, each six (6) months shall allow my name to remain on the Recall List for a period of twenty-four (24) months. It is understood and agreed that failure to properly notify the College within each six (6) month period, in writing on forms as provided to me by the College, shall mean automatic removal of my name from the Recall List.

Should a recall occur, I shall notify the College, in writing within seven (7) days from the date the Recall Notice was mailed, that I wish to be recalled.

It is further understood and agreed that should a change of home address and telephone number occur after my name has been placed on the Recall List, I shall notify the College, in writing within fifteen (15) days of such change. Further, the undersigned hereby releases and discharges the Board of Community College District No. 527, its members, agents, and employees of and from any and all liability whatsoever arising from failure of a recall attempt due to non-notification of such change of home address and telephone number.

_____

Employee Signature

_____

Effective Date

_____

Social Security Number                                                    _____

                                                                          Home Telephone Number

_____

Last Name, First Name, and Middle Initial (Print)

_____

Street Address, City, State, and Zip Code (Print)

Layoff Period Beginning_____and Ending_____

# Index

## A

arbitration .............................8, 13, 33, 34, 35
arbitrator ...................................30, 33, 34, 35

## B

bereavement ...........................................36
Board agenda...........................................14
Board policies...........................................14

## C

classification...........................................22, 47
classification review ....................................47
Committee on Political Education .............13
compensation..................7, 8, 12, 18, 25, 30,
37, 38, 39, 40, 43, 47
COPE ....................................................13
Cost Containment Committee...................15
credit union...............................................42

## D

disability...................................................40
discharge....................13, 15, 21, 26, 30, 40
discipline ......................10, 26, 27, 28, 29, 30
dues .......................................................12

## E

ergonomic keyboard...................................31
evaluation ....................................20, 21, 28

## F

fair share .............................................12, 13
Family Medical Leave Act ...........................39
flex time....................................................18

## G

grievance..................8, 11, 13, 14, 15, 21, 24,
30, 32, 33, 34, 35

## H

hiring wage..........................................43, 44
holidays .................................................38

## I

immediate family .....................................7, 36
indemnification .........................................13
Indemnification by Union...........................13
insurance.....................................15, 40, 42
IRS Section 125 .......................................42

## J

jury duty....................................................38

## L

just cause ...............................................26

## L

layoff........................................................22
lunch........................................................17

## M

management right .....................................10

## N

new position......................................8, 21, 24

## O

oral warning..............................................26
overtime............................................10, 18

## P

partial sick ...............................................38
past practice .............................................48
personal emergency...................................36
personnel file ...........................................28
posting ............................................18, 24
probationary period.............. 7, 12, 21, 22, 28
proration ................................................48
protecting equipment.................................30

## R

reimbursement .....................................41, 42
release time..............................................14
reorganization...........................................15

## S

salary adjustment ................................44, 45
salary range.................. 9, 21, 25, 40, 43, 44,
45, 46, 47
seniority ..................... 10, 20, 21, 22, 24, 45
sick ......................................29, 36, 37, 38, 40
summer ...........................................13, 17
summer work schedule ............................17
suspension ............................................26

## T

training.................................8, 15, 20, 28, 45
tuition waiver............................................41

## U

Union access..........................................14, 15
Union meeting ........................................13

## V

vacancies ................................................24
vacation ..................... 18, 36, 37, 38, 40, 46

video display ........................................ 30

**W**

wage adjustment ................................. 45
work assignment ........................... 18, 28

work break ........................................... 17
work week ............................................ 17
written warning .................................... 26

# FULL-TIME EMPLOYMENT TRANSFER REPORT

| NAME | POSITION | SALARY | EFFECTIVE | COMMENTS |
|---|---|---|---|---|
| Moises De Leon | Coordinator of Career Planning & Placement from Coordinator of Student Activities ($35,000) | $40,000 | April 28, 2004 | Classified Staff |

PLAINTIFF'S EXHIBIT 2

# MORTON COLLEGE

3801 SOUTH CENTRAL AVENUE • CICERO, ILLINOIS 60804 • 708/ 656-8000

June 17, 2004

Mr. Moises M. De Leon
6349 West 37th Street # 2W
Berwyn, Illinois 60402

Dear Mr. De Leon:

This letter is to notify you that a pre-disciplinary meeting has been set for Monday, June 28, 2004 at 12:00 noon in Room 107C at Morton College. The purpose of the meeting is to address the following charges:

1. Violation of Board Policy 8.2.1, Sexual Harassment.
2. Violation of Board Policy 6.5, Sexual Harassment of Students.
3. Violation of Board Policy 8.2, Conduct and Behavior of Staff.

The foregoing conduct violates policies cited and otherwise constitutes just cause for discipline up to and including termination of employment.

The disciplinary meeting may result in a recommendation for discipline or termination of your employment. You are entitled to have a Union representative to assist you in responding to the charges and in producing any information relative to the charges.

Dr. Phoebe K. Helm will serve as the President's designee at the hearing.

Sincerely,

Brent Knight
President

BK:in

cc: Greg Benson, Chairman – Classified Federation, Local 1600

Enclosures (3):   Violation of Board Policy 8.2.1
                  Violation of Board Policy 6.5
                  Violation of Board Policy 8.2



PLAINTIFF'S
EXHIBIT
3

# MORTON COLLEGE

3801 SOUTH CENTRAL AVENUE • CICERO, ILLINOIS 60804 • 708/ 656-8000

July 1, 2004

Mr. Moises M. De Leon
6349 West 37th Street # 2W
Berwyn, Illinois 60402

Dear Mr. De Leon:

At their June 30, 2004 meeting, the Board of Trustees approved the termination of your employment with Morton College. In addition to being paid through June 30, 2004, you will be paid for any accrued but unused vacation time. You have the right to purchase insurance through COBRA.

Should you have any questions, feel free to contact me.

Sincerely,

Brent Knight
President

BK:in

Sent Via Certified Mail

cc: Greg Benson, Chairman
    Classified Staff Federation Local 1600

PLAINTIFF'S
EXHIBIT
4